522 A.2d 584

**Shirley J. WHITMER, Appellant,**

**v.**

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Appellee.**

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed March 6, 1987.

Joyce Ullman, Philadelphia, for appellant.

Before CIRILLO, President Judge, and WICKERSHAM and KELLY, JJ.

KELLY, Judge:

In this case, we are called upon to determine whether the use, or attempted use, of a public pay telephone involves a "transaction in goods" so as to trigger application of implied warranties [1] imposed by Article II of the Uniform

1. 13 Pa.C.S.A. § 2314 provides in pertinent part:
   (a) Sale by merchant. Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food

Commercial Code as it has been adopted in Pennsylvania. 13 Pa.C.S.A. § 1101 *et seq.* (hereinafter Code). We find that neither the use, nor the attempted use, of a public pay telephone involves a "transaction in goods," and consequently, the implied warrant provisions of Article II of the Code do not apply.

Appellant, Shirley Whitmer, alleges that she was injured on July 26, 1981, when, as she lifted the receiver of a pay telephone, the metal cord which connects the receiver to the wall unit snapped and struck her in the mouth. The pay telephone in question was owned by appellee, Bell of Pennsylvania, and was mounted to the wall of the entrance way of a K–Mart store in Allentown, Pennsylvania.[2]

On January 1, 1985, appellant filed the instant suit, alleging that appellee had breached implied warranties imposed by the Code. On February 21, 1985, appellee filed preliminary objections in the nature of a demurrer. The preliminary objections were sustained by order and opinion of the trial court filed June 6, 1985. Reconsideration was denied, and this timely appeal followed.

On appeal, appellant contends that: 1) the trial court erred in failing to accept as true all of the well-pleaded facts of the complaint; and 2) the trial court erred in finding that the appellant's attempt to purchase a telephone call on a public pay telephone was not a "transaction in goods" so as

or drink to be consumed either on the premises or elsewhere is a sale.

13 Pa.C.S.A. § 2315 provides in pertinent part:
Where the seller at the time of contracting has reason to know:
(1) any particular purpose for which the goods are required; and
(2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;
there is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose.

**2.** On July 19, 1983, appellant commenced an action sounding in tort against appellee and K–Mart Corporation, based on the same incident. Judgment was entered in favor of appellee in the prior suit based upon appellant's failure to prosecute. At the time of the filing of appellant's brief in the instant appeal, appellant's suit against K–Mart was still pending.

to trigger the implied warranty provisions of the Code. We find no merit in either contention; accordingly, we affirm the order of the trial court.

## I.

■ Appellant first contends that the trial court erred in failing to accept as true all of the well-pleaded facts of the complaint. Appellant argues that the trial court "made its own gratuitious [sic] findings of fact, created an irrelevant factual scenario, and based its decision on a hypothetical factual alternative." (Appellant's Brief at 10). Appellant argues that had the trial court accepted the facts as pleaded, the trial court would not have sustained appellee's demurrer. We cannot agree.

It is axiomatic that in determining whether a complaint sets forth a cause of action, which if proven would entitle the plaintiff to the relief sought, the court must accept as true all of the well-pleaded material facts contained in the complaint, as well as all of the reasonable inferences deducible therefrom, but need not accept as true any conclusions of law. *See Allegheny Co. v. Commonwealth*, 507 Pa. 360, 372, 490 A.2d 402, 408 (1985); *Higgens v. Clearing Machine Corp.*, 344 Pa.Super. 325, 327, 496 A.2d 818, 819 (1985); *Bartanus v. Lis*, 332 Pa.Super. 48, 52–53, 480 A.2d 1178, 1180 (1984). Upon review of the pleadings and the order and opinion of the trial court, we find that the trial court, in fact, accepted as true all of the well-pleaded material facts of the complaint and gave the appellant the benefit of the reasonable inferences deducible therefrom.[3]

3. We note that while the trial court was bound (in ruling upon the demurrer) to accept as true the allegation that appellant lifted the receiver with intent to purchase a telephone call, it was not bound to accept appellant's conclusion of law that contractual relations were thereby established. Likewise, while the trial court was bound to accept the allegation that appellant was injured as a result of the movement of the receiver, it was not bound to accept appellant's conclusion of law that the pay telephone was a tangible movable good and that her use of the pay telephone was therefore a "transaction in goods" under the Code. Finally, we note that appellant's other allegations in support of this contention concern immaterial facts, and therefore, require no further discussion.

## II.

Appellant next contends that the trial court erred in finding that her use of a public pay telephone did not involve a "transaction in goods" so as to trigger the implied warranties of the Code. Appellant argues that by installing a pay telephone in the K–Mart store, the appellee invited the general public to purchase its product, telecommunications. Appellant cites *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612 (1964), *Schriner v. Pa. Power & Light Co.*, 348 Pa.Super. 177, 501 A.2d 1128 (1985), and *Lobianco v. Property Protection, Inc.*, 292 Pa.Super. 346, 437 A.2d 417 (1981), in support of her argument that her use of the public pay telephone involved the sale of a *tangible, movable,* and measurable *good,* and therefore, that the implied warranties of the Code applied.

Appellee argued before the trial court that, because appellant had not yet deposited any coins in the pay telephone, no contractual relationship existed between the parties at the time the alleged injuries occurred. Appellee also argued that pay telephones are provided merely as part of the vast telecommunication network by and through which telecommunication services are rendered, and that the subject matter of the appellant's intended transaction was telecommunication *services* and not a *tangible, movable good.* Appellee cited *Field v. Golden Triangle Broadcasting Inc.*, 451 Pa. 410, 305 A.2d 689 (1973), *cert. denied* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), *Williams v. West Penn Power Co.*, 313 Pa.Super. 461, 460 A.2d 278 (1983), *modified* 502 Pa. 557, 467 A.2d 811 (1983), and *DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355 (1975), in support of its contentions.[4]

The parties have not cited, and our research has not disclosed, any case in our courts, the federal courts, or those of our sister states, which has determined whether the use of a public pay telephone may be considered a

**4.** Appellee did not file an appellate brief. However, the record on appeal does contain a copy of the Memorandum of Law in Support of Defendant's Preliminary Objections which was filed in the trial court. It is from that document that appellee's arguments have been gleaned.

transaction in goods so as to trigger the implied warranty provisions of the Code.[5] Nonetheless, we find that the instant case is governed by basic contract principles and well-established precedent regarding the scope of the Uniform Commercial Code. We find that the appellant's attempt to use a public pay telephone did not involve a "transaction in goods" because the use of a public pay telephone involves the purchase of services and the use of equipment (by lease or bailment) rather than the sale of a tangible movable good. Consequently, we find that the implied warranty provisions of Sections 2314 and 2315 of the Code are not applicable to the use or attempted use of public pay telephones; therefore, appellee's demurrer was properly sustained.

## A.

■ Section 2102 restricts the scope and applicability of Article II of the Uniform Commercial Code (including the implied warranty provisions of Sections 2314 and 2315, *supra* at note 1), to cases involving "transactions in *goods.*" 13 Pa.C.S.A. § 2102. (Emphasis added). "Goods" are defined as "all things ... which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities ..., and things in action." 13 Pa.C.S.A. § 2105. Thus, in order to be a "transaction in goods," the subject matter of the transaction—the putative good—must be tangible and movable. *See Field v. Golden Triangle Broadcasting Inc.,* *supra,* 451 Pa. at 422–424, 305 A.2d at 696; *Tomb v. Lavalle,* 298 Pa.Super. 75, 78–79, 444 A.2d 666, 668 (1981).

Appellant contends that:

**5.** Appellee cited *Lauk v. General Telephone Co.,* 300 So.2d 759 (Fla. App.1974), wherein a Florida District Appeals Court affirmed an order dismissing a complaint based on alleged breaches of UCC implied warranties arising out of the furnishing of telephone services. We note, however, that in *Lauk* it was the plaintiff and not the court who characterized the telephone company's activities as the provision of services rather than the sale of tangible movable goods. 300 So.2d at 761. Consequently, the issue of whether the telephone company's activities could be construed as a transaction in goods was *neither* raised nor decided in *Lauk.*

The Appellee telephone company invited the Appellant consumer to purchase *its product, telecommunication,* by installing coin telephone equipment in the K–Mart store. When the Appellant consumer *attempted to purchase this product and the coin telephone equipment to do so,* she entered into a transaction in goods with the Appellee telephone company, . . . .

(Appellant's Brief at 7–8). (Emphasis added). Appellant reasons that the purchase of telecommunications, and the use of telephone equipment to do so, is analogous to the purchase of electricity or gas and should, therefore, be considered a "transaction in goods."

However, appellant's reliance upon *Gardiner v. Philadelphia Gas Works, supra,* and *Schriner v. Pa. Power & Light Co., supra,* is misplaced. In *Schriner,* this Court stated, "[t]he transmission of electricity, as well as other similar type consumable goods, is a *service* being rendered by the utility to prospective purchasers." 348 Pa.Superior Ct. at 188, 501 A.2d at 1134. This Court went on to find that, "electricity only becomes a product, for the purposes of strict liability, once it passes through the customer's meter and into the stream of commerce." *Id.* Thus, gas and electric utilities provide both transmission services, and separate and distinct, tangible, movable products (gas and electricity).

[3] Herein lies the distinction between *Gardiner* and *Schriner* and the instant case. The gas and electric utilities provide both transmission services and the products to be transmitted. The telephone company, however, provides transmission services, but not the communication to be transmitted. While the telephone company does provide certain incidental communications (for instance, directory assistance), *the predominant nature of the transaction remains the transmission of consumer provided communications* from one location to another which is the rendition of a service. When the transaction involves predominantly the rendition of services, the fact that tangible movable goods may be involved in the performance of

services does not bring the contract under the Code. *De-Matteo v. White, supra; Fraiser v. Greenblatt,* 7 D. & C.3d 779 (1978); *Victor v. Barzaleski,* 19 D. & C.2d 698, 701–02 (1959); *see also Lincoln Pulp & Paper v. Dravo Corp.,* 436 F.Supp. 262, 275 (D.C.Me.1977); *Lemley v. J & B Tire Co.,* 426 F.Supp. 1378, 1380 (W.D.Pa.1977); *see generally* Annotation, *Applicability of UCC Article II to Mixed Contracts for Sale of Goods and Services,* 5 ALR 4th 501 (1981 & Supp.1986).

<div align="center">B.</div>

■■■ Appellant also argues that she was attempting to purchase the use of telephone equipment. When a transaction involves movable and immovable goods, the transaction will be included or excluded from the scope of Article II based upon the character of the bulk of the assets sold. *Compare Field v. Golden Triangle Broadcasting Corp., supra,* 451 Pa. at 422–424, 305 A.2d at 696, *and DeFilippo v. Ford Motor Co.,* 516 F.2d 1313, 1322–23 (3rd Cir.1975), *cert. denied* 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141 (1975). While transmission lines are clearly not movable goods (*see Field v. Golden Triangle Broadcasting, Inc., supra,* 451 Pa. at 422–424, 305. A.2d at 696), whether other equipment connected to the telecommunications system may be considered movable goods depends on whether it is capable of being severed without material harm to the equipment or the property to which it is attached. Uniform Commercial Code Comment (1), *reprinted following* 13 Pa.C.S.A. § 2105. The fact, however, that a fixture has moving parts (such as a telephone receiver) would not make an otherwise non-severable fixture a movable good under the Code.

■■■ However, a transaction in goods, or contract or agreement pertaining thereto, is defined at Section 2106(a):

In this division unless the context otherwise requires 'contract' and 'agreement' are limited to those relating to the *present or future sale of goods.* . . . *A 'sale' consists*

*in the passing of title from the seller to the buyer for a price* (Section 2401).

13 Pa.C.S.A. 2106(a); *DeMatteo v. White, supra,* 233 Pa.Superior Ct. at 344–345, 336 A.2d at 357–58. Consequently, "[a] prerequisite to an action for breach of warranty is that there must be a *sale." Williams v. West Penn Power, supra,* 313 Pa.Superior Ct. at 465, 460 A.2d at 281. (Emphasis added). If, as appellee contended below, there was no "sale," then the character of the bulk of the assets would be irrelevant as the absence of a "sale" would take the transaction outside the scope of the Code.

Appellant contends, nonetheless, that there was a sale because:

The *contractual relationship* commenced when appellant reached for the ear and mouthpiece, removed the ear and mouthpiece from the cradle, all necessary movements to start the call in progress, and was attempting to put money into the coin box.

(Appellant's Brief at 21). (Emphasis added). However, even assuming that contractual relations existed,[6] it does not follow that the relations necessarily involved a "sale" as that term is used in the Code.

A lease, and not a sale, occurs when use and possession pass, but not title. *See Ottman v. Albert Co.,* 327 Pa. 49, 54, 192 A. 897, 899–900 (1937). Similarly, a bailment, and not a sale, occurs when possession or title is

6. Appellant argued in the trial court that the act of lifting the telephone receiver with intent to purchase a telephone call established contractual relations between appellant and appellee. Appellee, however, argued that because coins had not yet been deposited in the pay telephone, no contractual relations had been established and no sale completed. Undeniably, the use of pay telephones, like purchases in self-serve supermarkets, presents unique questions as to when the offer and acceptance process are complete. *Cf. Loch v. Confair,* 361 Pa. 158, 63 A.2d 24 (1949).

Although the trial court apparently agreed with appellee's analysis regarding the absence of an effective acceptance, it did not sustain appellee's demurrer upon that ground. Rather, the trial court held that, even if contractual relations had been established, the contract was not a transaction in goods as that term is used in the Code. Because we affirm that holding, we need not rule upon appellee's more problematic alternate basis for affirmance.

delivered under an express or implied agreement that the property will be redelivered to the original possessor when the purpose of the bailment is accomplished. *Ferrick Excavation & Grading Co. v. Senger Trucking Co.*, 315 Pa.Super. 69, 75, 461 A.2d 800, 802 (1983), *rev'd on other grounds* 506 Pa. 181, 484 A.2d 744 (1984).

■ Appellant intended to use the pay telephone for a measurable period of time; when her call was completed, she would have hung up the receiver and walked away. When she left, she would not have taken the phone or the vast telecommunications network with her.[7] To the extent that she was attempting to *purchase the use* of the telephone equipment, the transaction involved either a lease or bailment of the equipment and not a sale.[8] Neither leases nor bailments are within the scope of Article II of the Code.[9] *See Fraizer v. Greenblatt, supra,* 7 D. & C.3d at 781 ("We are ... without power to read into the code any interpretation which would apply its sections to leases rather than sales.").

## CONCLUSION

The use of a public pay telephone involves the *purchase of services* and the *use of equipment* (by lease or bailment).

7. For this reason, the instant case is distinguishable from *Lobianco v. Property Protection, Inc., supra,* cited by appellant. In *Lobianco,* the plaintiff had purchased a burglar alarm system from the defendant. The issue in *Lobianco* was whether the purchase of the system, or the installation and maintenance of the system, was the predominant feature of the transaction. Such is not the case here; *Lobianco* is, therefore, inapposite.

8. A purchaser's use of telecommunications services and telecommunication equipment extends for a period of time. The purchaser is then charged for that use at a set rate for a given time interval. Thus, what appellant characterizes as distinct product (telephone time) is, in reality, only the time period during which the lease or bailment takes place.

9. We note, however, that a *nominal* lease or bailment may be treated as a sale when it is coupled with an option to purchase for token consideration at the end of the lease or bailment term. *See e.g. Asco Mining Co. v. Gross Construction Co.,* 3 U.C.C.R.S. 293 (Pa.C.P. 1965); *see also In re United Nesco Container Corp.,* 47 B.R. 230 (Bkrtcy Pa.1985). However, this rule is clearly inapplicable to the instant case.

Because neither of the aspects of such a transaction are within the scope of Article II of the Code, it is unnecessary to determine which aspect predominates. In either case, it is clear that the use of a public pay telephone is not a "transaction in goods" under Article II of the Code, and that the warranties upon which appellant has predicated her complaint do not apply.

Based upon the foregoing reasons, the order of the learned trial court is affirmed.[10]

</div>

**10.** We note that we do not decide here whether the general law of negligence or the provisions of Restatement (Second) of Torts §§ 344 (business liability) or 402A (strict liability for defective product) would apply to the facts alleged in the instant complaint. *See e.g. Leichter v. Eastern Realty Co.,* 358 Pa.Super. 189, 516 A.2d 1247 (1986) (reviewing scope of § 344 liability); *Schriner v. Pa. Power & Light Co., supra* (reviewing scope of § 402A liability). None of these theories of liability were available in the instant case because the applicable two year statute of limitations expired prior to the filing of the instant action. This perhaps explains appellant's attempt to bring the incident under the warranty provisions of the Code which carry a four year statute of limitations. Thus, it is important to note that we have not held that a telephone company is free from liability for injuries caused by a defective pay telephone; rather, we have merely affirmed the trial court's ruling that liability does not arise under the warranty provisions of the Code.