574 A.2d 565

**Anthony CUCCHI and Grace Cucchi, h/w, Appellants,**

v.

**ROLLINS PROTECTIVE SERVICES CO., Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1990.

Decided April 26, 1990.

Richard F. Furia, Philadelphia, Julius S. Impellizzeri, for appellants.

R. Bruce Morrison, Norristown, Charles W. Craven, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

The principal issue presented by this appeal is whether Chapter 21 of the Uniform Commercial Code—Sales, 13 Pa.C.S.A. §§ 2101–2725, applies generally to transactions involving the lease of goods, and in particular, to the lease of the burglar alarm system which is the subject of this case.

The evidence adduced at trial discloses the following. In July, 1973, appellants Anthony and Grace Cucchi leased from appellee, Rollins Protective Services Company ("Rollins"), a burglar alarm system for installation in and protec-

tion of their family residence. Appellant Anthony Cucchi and a sales representative for Rollins signed a printed form entitled "Installation–Service Contract" which provided that appellants would pay the sum of $500.00 for installation of the burglar alarm system and a $15.00 monthly fee for service and maintenance of the system. This contract further provided that the "Rollins Protective System shall remain personal property and title thereto shall continue in Rollins," that appellants were to refrain from damaging the system, and that upon termination of the lease, the system would be returned to Rollins. Additionally, the contract contained a $250.00 limitation of liability provision for all loss or damage resulting from failure of the system in operation or performance.

The written contract expressly set forth the condition that: "This contract shall not be binding upon Rollins until accepted at Rollins' Home Office." In fact, the contract was never signed or executed by "Rollins' Home Office." However, appellants paid Rollins to install the burglar alarm system, and Rollins installed said system in appellants' residence.[1] Since that time in 1973, Rollins has maintained and serviced this burglar alarm system on a regular and continuing basis, including the replacement of component parts as needed, and appellants have made regular monthly payments for service and maintenance charges.

On February 2, 1984, appellants' home was burglarized and approximately $36,000.00 worth of personal property was stolen. Mrs. Cucchi recalled activating the burglar alarm system before she left the residence on the day of the burglary. When appellants' daughter discovered the burglary later that day, the burglar alarm system was activated but was not operating or signalling an alarm. Subse-

---

1. According to the trial court, appellants paid $500.00 immediately upon entering into the agreement, and over the next twelve to eighteen months paid an additional installation fee of over $500.00. Additionally, appellants paid the monthly service and maintenance fee throughout the duration of the agreement, which began at $15.00 per month and had increased to over $30.00 per month.

quent testing that night and the following day indicated that the system was operating only intermittently.

Rollins' representatives did all of the maintenance on the burglar alarm system, and the last service check had been on January 13, 1984. Within three months preceding the burglary, Rollins' personnel had replaced two transmitters which were integral component parts of the system.

On October 30, 1985, appellants filed a civil action in the Court of Common Pleas of Delaware County seeking damages against Rollins for the loss of their personal property. The complaint sounded in assumpsit for breach of express and implied warranties of merchantability and fitness for intended use (Count I), in trespass for negligence in manufacturing, installing, repairing and servicing the burglar alarm system (Count II), and in trespass on a strict liability theory under section 402A of the Restatement (Second) of Torts (Count III).

Rollins denied the allegations of liability, and asserted various defenses to the claims, including that the action was time-barred by the applicable statute of limitations and that any damages were limited to $250.00 by the express limitation of damages provision of the written contract.

The trial court, the Honorable Melvin G. Levy presiding, granted Rollins' motion for summary judgment as to the strict liability/402A count, but denied the motion on the remaining counts. Prior to trial, Rollins moved to admit the written "Installation–Service Contract" in its entirety as a "judicial admission" of fact, since the appellants had attached said contract to their complaint and relied upon it in their pleadings. The trial court denied this motion on the grounds that the written contract was not legally binding on the parties because it had never been executed by a representative of Rollins' home office as expressly required as a condition precedent to the binding effect of the contract.[2] Accordingly, the case proceeded to trial not on the

---

2. While the contract stated only that it "shall not be binding upon Rollins until accepted by Rollins Home Office," the trial court held that the contract was a nullity and did not bind appellants either

written contract, but upon the contract implied by the actions, oral representations and course of conduct of the parties.

At trial, appellant Anthony Cucchi testified as to the representations made by Rollins' salesman in July, 1973. These representations included that the system was "state of the art" and "almost unbeatable." Notes of Testimony, Trial, March 3, 1987 at 118. Additionally, Mr. Cucchi stated that the salesman "represented that this system would do what I wanted it to do which was to provide the safety, knowing that either if we were home, someone was entering my house and/or while we were out a siren would go off and it would ring in the neighborhood." *Id.*

At the close of the evidence, Rollins moved for a directed verdict on the express warranty and negligence counts. The trial court directed a verdict for Rollins as to the negligence count only, but found sufficient evidence of an express oral warranty to the effect that the burglar alarm system would provide safety. The jury was therefore instructed on appellants' breach of warranty claim, both express and implied.

The jury returned a verdict in the amount of $20,000.00 for appellant Grace Cucchi and $10,000.00 for appellant Anthony Cucchi. Rollins filed post-trial motions which were denied by the court of common pleas.[3]

On appeal to Superior Court, Rollins raised four issues for review: whether the trial court erred in ruling that the Installation–Service Contract was a nullity; whether the

because "obligations under a contract ... must be mutual and not merely unilateral...." Opinion denying post-trial motions, slip op. at 6.

**3.** Rollins' post-trial motions asserted trial court error in the following particulars: in failing to give binding legal effect to the provisions of the "Installation–Service Contract;" in denying Rollins leave to amend its complaint to raise the defense of the statute of frauds; in receiving evidence as to subsequent repairs to the burglar alarm system; in giving improper instructions to the jury as to the law on breach of warranty and improper comment on the evidence pertaining thereto; and in refusing Rollins' motion for a directed verdict based on the statute of limitations contained in the Uniform Commercial Code, 13 Pa.C.S.A. § 2725.

court erred in denying its motion for directed verdict based on the insufficiency of the evidence to support the breach of warranty claim; whether the court erred in admitting evidence of subsequent repairs; and whether the trial court erred in denying its motion for directed verdict based upon the statute of frauds and statute of limitations defenses contained in the Uniform Commercial Code, ("UCC"), 13 Pa.C.S.A. §§ 2201 (requiring contracts for the sale of goods for over $500.00 to be in writing, except as otherwise provided) and 2725 (four year statute of limitations in contracts for sale), respectively. In a unanimous opinion by President Judge Vincent A. Cirillo (joined by Judge Patrick R. Tamilia and Senior Judge John P. Hester), the Superior Court panel addressed each of these issues, and resolved all but one against Rollins. On this one last issue, Superior Court held that the provisions of the UCC regarding express and implied warranties and its statute of limitations were applicable to the transaction involving the lease of the burglar alarm system, and that the Cucchis' complaint for breach of warranty under the UCC was untimely under section 2725, 13 Pa.C.S.A. § 2725, because it was filed more than four years after the system was delivered. The Superior Court thus vacated the judgment of the lower court, and dismissed the breach of warranty action against Rollins.

Appellants challenged Superior Court's ruling on the statute of limitations by filing a petition for allowance of appeal in this Court. Rollins filed a conditional cross-petition for allowance of appeal requesting that, in the event this Court grant appellants' petition, we also grant the conditional cross-petition asserting that Superior Court erred in ruling that the Installation–Service Contract was not binding on the parties, and in resolving the other issues that Rollins had raised in that court against it. This Court granted the Cucchis' petition for allowance of appeal, but denied Rollins' cross-petition. This appeal followed.[4]

4. Part II of Rollins' Brief filed with this Court asserts that, in the event this Court were to overrule the Superior Court's determination that

With the exception of the resolution of the issue of the timeliness of appellants' complaint under section 2725 of the UCC, 13 Pa.C.S.A. § 2725, we agree with the excellent opinion of the Superior Court regarding the applicability of the Sales provisions of the UCC to transactions involving the lease of goods. (In the uniform model of the UCC, the Sales division is known as Article 2; in Pennsylvania, the Sales division of the UCC is set forth as Chapter 21, 13 Pa.C.S.A. §§ 2101–2725; hereinafter, we will refer to the Sales division of the UCC as "Article 2/Chapter 21.")

Superior Court first held that Article 2/Chapter 21 of the UCC does not by its terms apply to contracts for the lease of goods. *Cucchi v. Rollins Protective Services*, 377 Pa. Super. 9, 25–26, 546 A.2d 1131, 1139 (1988). Although 13 Pa.C.S.A. § 2102 provides that, unless "the context otherwise requires, this division applies to transactions in goods," the Superior Court correctly noted that the entire tenor of Article 2/Chapter 21, including its warranty provisions, deals with "sales," "contracts for sale," "sellers" and "buyers." Since "sale" is defined as "the passing of title from the seller to the buyer at a price," 13 Pa.C.S.A. § 2106(a), and since the burglar alarm system in this case was only leased to appellants and would be returned to Rollins upon termination of the agreement, Superior Court held that Article 2/Chapter 21 was not strictly applicable to the transaction. 377 Pa.Super. at 25–26, 546 A.2d at 1139. We agree.

Superior Court next considered whether the Sales division of the UCC, Article 2/Chapter 21, "should be judicially extended to cover transactions in the form of a lease." 377 Pa.Super. at 26–27, 546 A.2d at 1140. As that court ob-

the appellants' filing of the complaint was outside of the statute of limitations, then this Court should reverse Superior Court's ruling that the written contract was not binding and was unenforceable, and we should modify the judgment according to the limitation of damages clause contained in said contract. We do not accept Rollins' invitation to review the Superior Court's determination of this issue, as our denial of Rollins' cross-petition for allowance of appeal (which specifically raised this issue) forecloses further review of the validity of the written contract.

served, this is an issue of first impression in the appellate courts of this Commonwealth, although several trial courts have answered that issue in the affirmative. *See* decisions of the Courts of Common Pleas cited, *id.* There is, however, no dearth of case law from other jurisdictions nor of commentary in the legal journals and reviews on this subject. This issue has been handled somewhat inconsistently by the courts and the commentators, and much has been written on the subject. *See id.* 377 Pa.Super. at 27–30, 546 A.2d at 1140–42; *see also* Special Project, *Article Two Warranties in Commercial Transactions: An Update,* 72 Corn.L.Rev. 1161, 1162–68, 1205 (1987); *and* Annot., *What Constitutes A Transaction, A Contract for Sale, Or A Sale Within The Scope Of UCC Article 2,* 4 ALR 4th 85 (1981).

As Superior Court observed, *most,* (but not all) courts that have considered the issue have concluded that Article 2 of the UCC (Chapter 21 in Pennsylvania) should be judicially extended to other sorts of transactions in goods, including various forms of leases, under one of several approaches: (1) that Article 2/Chapter 21 is applicable in its entirety to leases of goods because the term "transaction" in goods is broad enough to encompass leases; (2) that some leases are functionally equivalent to sales, and therefore Article 2/Chapter 21 should apply to such lease agreements by analogy; and, (3) that *selected* provisions of Article 2/Chapter 21 should be applied to lease transactions by analogy because, "although the differences between leases and sales weigh against the extension of all of the provisions of [Article 2/Chapter 21] to leases," nevertheless there are sufficient economic and practical similarities between sales and leases of goods to apply at least some of the provisions of Article 2/Chapter 21 to lease transactions. 377 Pa.Super. at 29–30, 546 A.2d at 1140–42.

Superior Court rejected the first approach as contrary to the express language of the UCC, and rejected the second approach as amorphous and inconsistent in application. 377 Pa.Super. at 27–29, 546 A.2d at 1140–41. That court then

adopted the third approach as the law of this Common-wealth, reasoning as follows:

Many consumers and businesses are leasing goods rather than buying them. *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 448 & n. 1, 212 A.2d 769, 776 & n. 1 (1965) (further citations omitted). By leasing goods, parties achieve substantially the same result as by buying and selling. The essence of both transactions is that the lessee/buyer seeks to acquire the right to use goods and the lessor/sellor [sic] seeks to sell the right to use the goods.

By means of a bailment parties can often reach the same business ends that can be achieved by selling and buying. The goods come to the user for the time being and he benefits by their use and enjoyment without the burdens of becoming and remaining the owner. The owner-lessor benefits by receiving the rent for the temporary use.

*Cintrone, supra,* 45 N.J. at 447, 212 A.2d at 776 (citations omitted). Considering that a large volume of commercial transactions is being cast in the form of a lease instead of a sale, and that leases reach the same economic result as sales, it would be illogical to apply a different set of rules to leases than to sales where there is no justification for doing so.

However, there are significant differences which make the outright extension of [Article 2/Chapter 21] to leases impracticle. These differences include transfer of title, incidents of ownership, risk of loss, financial considerations, taxes, and bankruptcy proceedings. Faced with these differences and the fact that [Article 2/Chapter 21] was designed to govern *sales*, we cannot be certain that the impact of [Article 2's/Chapter 21's] provisions on leases would not be obscure or undesirable. In other words, we cannot be certain that we would not be justified in applying some provisions of [Article 2/Chapter 21] to sales and not to leases. To gain that certainty, we would have to examine each of [Article 2's/Chapter 21's]

provisions. Given the impossibility of performing this task within one sweeping opinion, we would be remiss in holding [Article 2/Chapter 21] applicable to leases *in its entirety* at this time. Accordingly, we will analogize the provisions of [Article 2/Chapter 21] to leases only when the specific provision has been examined and the circumstances of the situation warrant the same treatment for leases which is given to sales. In this case, we must examine [Article 2's/Chapter 21's] statute of limitations for breach of warranty actions to determine whether it should be held applicable to leases. Because it would be senseless to apply this limitation provision if [Article 2's/Chapter 21's] express and implied warranty provisions are not applicable to leases, we will first examine the applicability of these warranty provisions.

377 Pa.Super. at 29–30, 546 A.2d at 1141–42.

We agree with Superior Court and we will judicially extend by analogy selected provisions of Article 2/Chapter 21 to transactions involving the lease of goods on a case by case basis, considering the nature of the specific transaction (lease), the language, purpose, and intent of the UCC provision under consideration, and the practicality of applying the particular provision(s) at issue to the particular transaction in goods. In a related context, this Court has made it clear that there may be little reason in law or logic to apply different sets of rules to lessors/lessees than to sellers/buyers. Thus, in *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), this Court held that the reasoning, policies and purposes of section 402A of the Restatement (Second) of Torts "applies with equal force to both lessors and sellers," and "that all suppliers of products engaged in the business of supplying products for use or consumption by the public are subject to strict liability" under section 402A.[5]

---

5. In *Nath v. National Equipment Leasing Corp.*, 497 Pa. 126, 439 A.2d 633 (1982), a majority of the members of this Court refused to extend the *Francioni* reasoning to lessors to leases that were purely finance devices securing certain goods, as opposed to conventional or "true" leases. This author dissented, joined by Justices Flaherty and Kauff-

Additionally, we find that Superior Court's approach is supported by the National Conference for Commissioners on Uniform State Laws and the American Law Institute which has, in October, 1987, adopted Article 2A of the Uniform Commercial Code, a proposed revision to the UCC entitled "Leases." The drafters of Article 2A–Leases recognized the inconsistency in the various judicial approaches and among the commentators on the issue of the applicability of Article 2–Sales to lease transactions, and determined that "Such a statute has become especially appropriate with the exponential expansion of the number and scale of personal property lease transactions ... involving billions of dollars annually." *Forward to Proposed Article 2A–Leases,* by Geoffrey C. Hazard, Jr., Chairman of the Permanent Editorial Board for the Uniform Commercial Code. The drafters of Article 2A–Leases decided, according to the official comments, that Article 2–Sales was "the appropriate statutory analogue" for conventional leases of goods since the "lease is closer in spirit and form to the sale of goods than to the creation of a security interest." Thus, many of the provisions of Article 2A–Leases were adopted and modified from Article 2–Sales to apply to conventional or "true" lease transactions, with very little change in many instances from the corresponding provisions in Article 2–Sales.

Article 2A–Leases recognizes and maintains a distinction between "true" conventional leases of personal property/goods and finance leases, i.e., security devices disguised as a lease. (*See* note 5, *supra.*) According to the official comments, many of the assumptions underlying Article 2–Sales are equally applicable to transactions involving the conventional lease of goods, namely that parties to both of these types of transactions frequently act without counsel, that the agreement of the parties to these transactions is often oral or evidenced by scant writings, that the obligations between the parties to these transactions are

man, and would have extended the *Francioni* decision to cover pure finance leases as well, on the grounds that many of the policy reasons for applying strict liability to sellers are equally applicable in the case of finance lessors. 497 Pa. at 133–36, 439 A.2d at 636–38.

bilateral, and that the applicable law should and does preserve, as fully as possible, the freedom to contract in these transactions. However, the assumptions underlying Article 9–Secured Transactions were deemed to be different, and more analogous when dealing with "leases" of goods that were actually finance devices. The assumptions for finance leases/security devices are that parties to these types of transactions are regularly represented by counsel, that the agreement of the parties in these transactions is frequently reduced to writing, extensive in scope, that the obligations between parties in these transactions are essentially unilateral, and because applicable law limits the freedom of contract in these transactions.

This Court finds that the promulgation of Article 2A–Leases offers important support for our decision today to judicially extend Article 2/Chapter 21 in Pennsylvania to conventional lease of goods transactions. We do not, however, believe it is in our prerogative to judicially adopt Article 2A–Leases in toto, since our General Assembly was the first state legislature to enact the UCC in 1953 and has not seen fit as yet to adopt Article 2A–Leases. (California, effective January 1, 1990, and Oklahoma, effective November 1, 1988, have enacted Article 2A–Leases into law.) Nevertheless, we consider it appropriate to look to the relevant provisions of proposed Article 2A–Leases for guidance when we consider whether to judicially extend particular provisions of Article 2/Chapter 21 to transactions involving the conventional lease of goods.

■ In the present case, the Superior Court had little difficulty in determining that the warranty provisions of Article 2/Chapter 21, 13 Pa.C.S.A. §§ 2313–15, should apply to the conventional leasing of goods, and held that "the express and implied warranty provisions of Article 2, specifically sections 2313 and 2314, apply by analogy to leases." 377 Pa.Super. at 31–33, 546 A.2d at 1143.[6] We agree.

6. These sections provide, in relevant part, as follows:
**13 Pa.C.S.A. § 2313. Express Warranties....** (a) **General rule.—** Express warranties by the seller are created as follows:

As that court noted, lessees rely upon implied and express representations of lessors as to the quality, merchantability and fitness of goods to the same extent and in the same manner as buyers rely upon similar representations by sellers. 377 Pa.Super. at 31, 546 A.2d at 1142. Superior Court looked to this Court's decisions in the strict liability area, *see, e.g., Francioni v. Gibsonia Truck Corp., supra,* which minimize the distinction between sales and leases for purposes of breach of warranty actions alleging personal injuries under section 402A of the Restatement (Second) of Torts. 377 Pa.Super. at 32–33, 546 A.2d at 1143. We agree. The Superior Court found "the sale-lease distinction equally unimportant in the area of [UCC] warranty law; for both leases and sales, there should be only one body of warranty law. This will promote uniformity in commercial transactions whether they be cast in the form of a lease or a sale." 377 Pa.Super. at 33, 546 A.2d at 1143. We agree. We find Superior Court's reasoning compelling. Additionally, we find further support for applying the warranty provisions of Article 2/Chapter 21 to transactions involving the lease of goods in proposed Article 2A–Leases, which essentially adopts intact the Sales warranty provisions of Article 2/Chapter 21 to lease transactions, with only relatively minor stylistic adaptations. *See* Article 2A–Leases, sections 2A–210–213, corresponding to 13 Pa.C.S.A.

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

\*     \*     \*     \*     \*     \*

(b) **Formal words or specific intent unnecessary.—**
**13 Pa.C.S.A. § 2314. Implied warranty: merchantability; usage of trade**
(a) **Sale by Merchant.** ... a warranty that the goods shall be merchantable is implied....
(b) **Merchantability standards for goods.**—Goods to be merchantable must be at least such as:

\*     \*     \*     \*     \*     \*

(3) are fit for the ordinary purposes for which such goods are used....
Section 2315, 13 Pa.C.S.A. § 2315, provides that there is an implied warranty that the goods are fit for any particular purpose for which the seller has reason to know that the goods are required.

§§ 2313–15. Accordingly, we hold, as did Superior Court, that the express and implied warranty provisions of Article 2/Chapter 21 apply to transactions involving the lease of goods.

■ Finally, the Superior Court held that the statute of limitations for breach of warranty actions under Article 2/Chapter 21, 13 Pa.C.S.A. § 2725, applies to lease of goods transactions. 377 Pa.Super. at 36, 546 A.2d at 1144. Again, we agree with the Superior Court. In determining the appropriate statute of limitations for an action for breach of warranty under the UCC for personal injury allegedly caused by defective goods, this Court held: "We rule today that *section 2–725 of the Code [13 Pa.C.S.A. § 2725] applies to all breach of warranty actions brought under the Code* and that no exception will be made merely because the claim seeks to recover for personal injury." *Williams v. West Penn Power Co.*, 502 Pa. 557, 570, 467 A.2d 811 (1983). We see no reason to deviate from this rule laid down in *Williams* that "all breach of warranty actions" brought under the UCC, including breach of warranties in sales-analogous transactions (i.e., conventional leases of goods), are governed by the statute of limitations set forth in section 2725, 13 Pa.C.S.A. § 2725.

■ We come, then, to our only point of departure from the Superior Court, namely the application of section 2725 to the facts and circumstances presented herein. Section 2725 provides, in relevant part:

**Statute of limitation in contracts for sale**

(a) **General rule.**—An action for breach of any contract for sale must be commenced within *four years after the cause of action has accrued.* By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(b) **Accrual of cause of action.**—A *cause of action accrues when the breach occurs,* regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is*

*made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.* (Emphasis added.)

Superior Court noted that section 2725 explicitly ties a breach of warranty in a sales transaction to the date "when tender of delivery is made," except in the one exceptional circumstance where the warranty "explicitly extends to future performance of the goods," in which case the cause of action "accrues when the breach is or should have been discovered." Relying on *Patton v. Mack Trucks, Inc.,* 360 Pa.Super. 1, 519 A.2d 959 (1986), Superior Court interpreted the "time of discovery" exception to the usual "tender of delivery" rule very narrowly, and rejected the argument that a warranty necessarily "extends to future perform-ance" merely because it contains some promises regarding the manner in which goods will perform after delivery is made. 377 Pa.Super. at 37–38, 546 A.2d at 1145. *Patton* involved a warranty that all articles and services covered by the purchase order for a truck "meet or exceed the regula-tions established and promulgated under the Federal Occu-pational Safety and Health Law." Superior Court stated in that case that if

we held that the warranty "explicitly extended" to future performance, we would allow the exception to swallow the rule.... We must also reject the related argument that a warranty necessarily extends to future perform-ance when the aggrieved party cannot possibly discover the breach until after tender of delivery."

360 Pa.Super. at 9–11, 519 A.2d at 964–65.

The Superior Court in this case considered that the ex-press and implied warranties made in regard to the burglar alarm system did not explicitly relate to the future condition or performance of the system, but pertained only to the condition of the alarm system when it was first installed. 377 Pa.Super. at 37, 546 A.2d at 1145. Accordingly, finding its "reasoning and conclusions in *Patton* equally applica-

ble," Superior Court held that the four year statute of limitations began to run in 1973 when the burglar alarm system was installed, and delivery was made, and thus the lawsuit filed in October 1985 was untimely. 377 Pa.Super. at 38, 546 A.2d at 1145.

We agree that the warranty given in *Patton* did not explicitly extend to future performance and that, therefore, the breach of warranty in that case occurred when tender of delivery was made, not when the actual breach was or should have been discovered. *See also Rufo v. Bastian–Blessing Co.*, 417 Pa. 107, 207 A.2d 823 (1965). *Patton* is, however, clearly distinguishable from the instant case.

Section 2725 of the UCC represents an attempt by the drafters, and by our General Assembly, to accomodate the legitimate needs and expectations of the "sellers" and "buyers" (or vendors/purchasers, lessors/lessees) dealing in goods. *See* Williams, *The Statute of Limitations, Prospective Warranties, and Problems of Interpretation in Article Two of the UCC*, ("Williams") 52 G.W.L.Rev. 67, 68 (1983). As with all statutes of limitations, the major purpose of a given "cut-off" date for claims is the repose of stale claims. The drafters of section 2725 decided on a four year statute of limitations *from the tender of delivery* (rather than from the time-of-discovery of the breach) primarily to favor the interests of the seller in being able to "close the books" on a given transaction. *See Williams, supra* at 100–01, 76–82. Thus, the potential liability of most sellers would be reasonably certain as of four years from the date the goods were delivered.

However, the UCC drafters also recognized that, frequently the parties bargained for (and buyers expected) promises related to the future performance of the goods, and that such agreements and expectations were legitimate and deserving of protection. *Williams, supra* at 76–82. Thus, the time-of-discovery "exception" was provided in section 2725(b) for warranties "explicitly extend[ing] to future performance." While the term "explicit" might seem to eliminate the possibility of *implied* prospective

warranties, the better view is that warranties explicitly extending to future performance may be both express and implied by content and circumstances sufficiently specific as to unequivocally refer to future performance. *Williams, supra* at 81 (*and see* cases cited therein); *Ranker v. Skyline Corp.*, 342 Pa.Super. 510, 493 A.2d 706, 709 (1985), *citing Perry v. Augustine*, 37 Pa.D. & C.2d 416 (Mercer C.P.1965).

Considering the nature of the transaction involved in this case, and the respective interests of the lessor and lessee, we have no difficulty finding that the express and implied warranties made by Rollins explicitly extended to future performance of the burglar alarm system and that discovery of the breach had to await the time of performance.

Appellants agreed to pay an installation charge and monthly fees for the service and maintenance of a burglar alarm system. The predominant feature of that system was goods [7]—the transmitters, receivers, siren and other hardware that was installed and serviced by Rollins. Appellants had nothing to do with the service and repair of this system (other than to notify Rollins when and if they knew it to be malfunctioning). Rollins provided regular and continual service and maintenance of the burglar alarm system, including the replacement of component parts as needed. Two transmitters had been replaced by Rollins within three months prior to the burglary. The burglar

---

**7.** As the lease contract herein was one predominantly for goods, the UCC provisions dealing with the sale of goods apply, even though a significant aspect of the total contractual relationship involved service and maintenance of those goods. *See Whitmer v. Bell Telephone Co.*, 361 Pa.Super. 282, 522 A.2d 584 (1987) and Annot., *Applicability of UCC Article 2 To Mixed Contracts For Sale Of Goods And Services*, 5 A.L.R.4th 501 (1981).

While appellants' complaint might be read as setting forth a cause of action based upon a separate contract for the service and maintenance of the burglar alarm system, appellants do not argue that a separate cause of action exists for breach of this agreement. A breach of a *separate* agreement for the service and/or maintenance of goods, or one predominantly for service/maintenance, would presumably be governed by the statute of limitations governing contracts in general, 42 Pa.C.S.A. § 5525, although we express no opinion on this point.

alarm system was to remain the property of Rollins and was to be returned to Rollins upon termination of the lease.

The evident intention of the parties was that Rollins would supply a fully operational, continuously functioning system of security *throughout* the duration of the lease, in return for which appellants would pay an installation fee and regular monthly fees. The implied warranty in such a transaction is that the burglar alarm system is merchantable and fit for its ordinary purpose and intended use, namely that an alarm will sound if a burglar enters the home. *Lobianco v. Property Protection, Inc.*, 292 Pa.Super. 346, 437 A.2d 417, 424 (1981). The express warranty found by the trial court and jury in this case was that the burglar alarm system would provide "safety," which, considering the nature of the goods leased, meant protection from unauthorized intrusion. While these warranties, express and implied, do not in and of themselves "explicitly extend" to future performance, this explicit extension is manifest from all of the circumstances where these parties quite clearly bargained for a continually operational burglar alarm system for the duration of the lease. Indeed, the very nature of a conventional lease of goods with monthly payments by the lessee and the continuous obligation of the lessor to service and repair, especially where (as here) the goods are to be returned in working order to the lessor at the end of the lease, supports a finding that the future performance of the goods has been warranted, and that the goods will continue to operate and remain fit for their ordinary and intended use.

Recognizing that in the typical conventional lease of goods transaction, the respective interests of the lessor and the lessee require a somewhat different accomodation than those of the seller and buyer in the typical sale of goods transaction, the drafters of Article 2A–Leases adopted the following proposed statute of limitations:

### § 2A–506. Statute of Limitations.

(1) An action for default under a lease contract, including breach of warranty or indemnity, must be commenced

*within 4 years after the cause of action accrued.* By the original lease contract the parties may reduce the period of limitation to not less than one year.

(2) A *cause of action for default accrues when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party or when the default occurs, whichever is later.* A cause of action for indemnity accrues when the act or omission on which the claim for indemnity is based is or should have been discovered by the indemnified party, whichever is later.

By eliminating section 2725's "tender of delivery" as the usual event which begins the running of the four year statute of limitations ("breach of warranty occurs when tender of delivery is made...."), the drafters of Article 2A–Leases have made the "explicitly extends to future performance" or "time of discovery" exception the norm in the lease of goods transaction. This supports our view that the parties in a conventional lease of goods transaction presumably barter for the future performance of the goods. Certainly that is the case under the circumstances of appellants' lease from Rollins of a burglar alarm system which Rollins was to and did supply and was to keep fully functional throughout the duration of the lease.

We hold, therefore, that the express and implied warranties made by Rollins explicitly extended to the future performance of the burglar alarm system and that discovery of the breach of warranty, in that case, had to await the time of such performance. Therefore, the cause of action accrued, and the four year statute of limitations began to run, when the breach was discovered on February 2, 1984. Appellants' complaint alleging breach of warranty under the UCC was timely filed on October 30, 1985.

Order of the Superior Court is reversed, and the judgment entered by the Court of Common Pleas of Delaware County is reinstated.

NIX, C.J., filed a concurring opinion joined by FLAHERTY, J.

ZAPPALA, J., filed a dissenting opinion joined by McDERMOTT and CAPPY, JJ.

CAPPY, J., filed a dissenting opinion.

NIX, Chief Justice, concurring.

In this case the majority seeks to reverse the Superior Court's decision, notwithstanding its adoption of that court's application of provisions of Article 2 of the Uniform Commercial Code ("U.C.C.") to the facts of this case. In so doing the majority conducts an unnecessary examination of the applicability of the U.C.C. statute of limitation. The trial court, in a well-written opinion, properly disposed of the statute of limitations argument by concluding that the nature of the instant contract distinguished it from the type of contract in which there was a single transaction of goods. *See, e.g., Rufo v. The Bastian–Blessing Co.*, 417 Pa. 107, 207 A.2d 823 (1965). The trial court in the instant matter stated:

> In *Rufo*, only a single sale of an item occurred, while in the instant case there was a repeated month-to-month renewal of a lease at will. Consequently, while Rufo is controlling in situations involving a single transaction of goods, it is inapposite where, as in the instant case, the agreement is renewed repeatedly on a month-to month basis and in effect involves multiple transactions in goods.

Slip op. at 13. (No.)

The Superior Court ignored the nature of this transaction and attempted to apply the U.C.C. sale-of-goods principles. That court relied upon the physical transfer of equipment to justify their conclusion that a lease of goods had occurred. The court then exacerbated the problem by citing *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), a tort case, as authority for analogizing sale contracts to leasing transactions. The Superior Court's mistaken view of the nature of the transaction occasioned its

reaching an erroneous conclusion. The majority accepts the Superior Court's characterization of this transaction and similarly attempts to extend this Court's tort analysis in *Francioni* to contract principles.

As stated, the initial error occurred in this case when the Superior Court ignored the true nature of the instant transaction and applied U.C.C. sale-of-goods principles to a contract for the sale of services. The court then concluded that the action was time-barred by the U.C.C. statute of limitations. As is conceded, the title to the equipment was never intended to be transferred to the appellants. The alarm system was merely installed in their home and leased to them as part and parcel of the contract for continuing security services. Therefore, the provisions of the U.C.C. were irrelevant to this transaction which was a contract for the sale of a service, not a contract for the lease or sale of the equipment.

Under the instant agreement, this contract for services was renewed each month when appellants paid the service fee and Rollins continued to provide maintenance and protection. Here, the cause of action arose on February 2, 1984, when the alarm system failed to operate properly. The institution of this action on October 30, 1985, was clearly not time-barred. 42 Pa.C.S. § 5525(3).

The majority's incorrect analysis of this matter is aggravated by the fact that it, like the Superior Court, analogizes tort law to this contractual situation to support a finding that sellers and lessors occupy a similar position. This analogy overlooks the obvious distinctions between the underlying policies for the imposition of tort liability and those policies upon which contractual liability is based. In tort cases, the objective is to modify a course of behavior through the allocation of financial risk upon the party in the best position to prevent the harm. In contrast, contract law contemplates that the parties to an agreement have volunteered to accept certain risks or financial responsibilities throughout the life of the contract. While tort law principles are flexible with changing societal expectations, con-

tract principles are expected to adhere to the intent of the parties who entered into the obligation. The majority here ignores the important distinction between the two disciplines and changes the intended obligations of the respective parties under this contract. The effect of the majority's reasoning is to breach the sanctity of contractual relationships and to contravene the constitutional protection against the impairment of contracts.

For the foregoing reasons, I concur in the result.

FLAHERTY, J., joins in this concurring opinion.

ZAPPALA, Justice, dissenting.

The majority has been persuaded that judicial wisdom dictates that Chapter 21 of the Uniform Commercial Code—Sales, 13 Pa.C.S.A. §§ 2101–2725, be extended to leases of goods—a "wisdom" that has not yet befallen the Legislature, as the majority recognizes by its statement that the revisions proposed by Article 2A have not been enacted in Pennsylvania. While I do not expect my words to dissuade the majority from doing what the Legislature has not seen fit to do, I must state that I find it unwise to effect sweeping changes in lease transactions merely because the judiciary is impatient with the Legislature's failure to do so. At the very least, individuals and businesses are entitled to know what legal consequences may arise from lease transactions. Legislation would provide this; judicial decisions affecting transactions made prior to their pronouncements would not.

Even if I felt compelled, as does the majority, to fill what is perceived as a void in the body of warranty law, I could not agree with the disposition of the statute of limitations issue in this case. The Superior Court's resolution of this issue is consistent with its attempt to apply Article 2 provisions to the lease by analogy. The majority's resolution, however, distorts the concept of warranty for future performance and expands liability retroactively under leases beyond the period contemplated by Article 2 for sales.

Under Article 2, the applicable statute of limitations is set forth at 13 Pa.C.S. § 2725 and provides as follows:

**(a)** *General rule.*—An action for breach of any contract for sale must be commenced within four years after the cause of actions has occurred....

**(b)** *Accrual of cause of action.*—A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action occurs when the breach is or should have been discovered.

At trial, Anthony Cucchi testified that Rollins's salesman had stated that the system was "state of the art" and "almost unbeatable". He indicated that the salesman represented that the system would do what he wanted it to, which was to provide safety. The majority interprets this testimony as express and implied warranties explicitly extending to the future performance of the burglar alarm system. From this interpretation, the majority reasons that the four year statute of limitations began to run on February 2, 1984—the date on which the Cucchis' home was burglarized—almost eleven years after the lease was entered into.

The majority states:

The express warranty found by the trial court and jury in this case was that the burglar alarm system would provide "safety," which, considering the nature of the goods leased meant protection from unauthorized intrusion. While these warranties express and implied, do not in and of themselves "explicitly extend" to future performances, this explicit extension is manifest from all of the circumstances where these parties quite clearly bargained for a continually operational burglar alarm system for the duration of the lease.

Majority at 531. This analysis is a stark departure from the exception stated under Article 2's limitation provision for breach of warranty actions, 13 Pa.C.S. § 2725. The majority looks to the circumstances surrounding the transaction to create a warranty "explicitly" extending to the future performance of the goods. Resorting to an analysis of the surrounding circumstances, the majority creates a warranty that *explicitly* extends to future performance by *implying* the existence of the warranty from the circumstances.

The majority admits that the testimony regarding safety did not in itself explicitly extend to future performance. Clearly, then, there was no warranty *explicitly* extending to future performance of the goods. "Explicit" is defined by Webster's Dictionary as "fully and clearly expressed; leaving nothing merely implied; unequivocal." It is now defined by the majority to include its antithesis—that is, what is "implicit"; what is garnered from the surrounding circumstances; what is not expressly stated.

The sounder and more consistent approach is that expressed by the Superior Court's opinion in this case. The Superior Court stated,

> Having determined that 13 Pa.C.S. § 2725 applies to breach of warranty actions in lease transactions, we must now apply the limitation provision to the case at bar. The alarm system was installed in the Cucchis' residence in 1973. Delivery of the alarm system was, therefore, tendered in 1973. This date of delivery is not affected by the fact that the lease of the alarm system was continually renewed every time the Cucchis made another payment to Rollins or that Rollins periodically made repairs on the alarm system and replaced some of its parts. Only if Rollins had repossessed the alarm system and then reinstalled it or another system in the Cucchis' home every time the Cucchis renewed their lease would the warranties begin anew with the Cucchis' renewals of their lease. Any other method of reasoning would unfairly expose lessors to far greater liability than sellers. Moreover,

any defect in the operation of the alarm system attributable to the parts in the alarm which were replaced or to the work which was done when Rollins repaired the system is entirely irrelevant to the Cucchis' cause of action for breach of warranty. Such a defect, instead, would pertain to a cause of action based on Rollins' duty to repair the system.

Furthermore, Rollins' express warranty, that the system would provide "safety," did not explicitly relate to the future performance or condition of the alarm system. Rollins' statement regarding the system, rather, related to the good at the time it was leased to the Cucchis or installed in their residence. Likewise, the implied warranty of merchantability pertained to the condition of the alarm system when it was first installed in the Cucchis' home.

In *Ranker v. Skyline Corporation,* 342 Pa.Super. 510, 493 A.2d 706 (1985), the Appellant brought an action to rescind the sale of a travel trailer alleging a breach of express and implied warranties of the contract of sale. The complaint was dismissed on the basis that the four year statute of limitations of 13 Pa.C.S. § 2725 had expired. In affirming the dismissal of the complaint, the Superior Court rejected Appellant's argument that the action was not untimely because the written warranty contained a promise to repair defects within a specified time.

The written warranty provided that manufacturing defects reported within one year after the delivery of the trailer would be corrected without charge and within a reasonable time. Appellant argued that this express agreement extended to future performance of the goods and that the period of limitation did not begin to run until after attempts to correct defects were proven to be unsuccessful.

The Superior Court rejected the argument, holding:

[Appellee's] written warranty provided for correction of manufacturing defects reported to it within one year after delivery. That language, however, did not *explicitly extend* the warranty to future performance. It did not

pertain to performance of the trailer, but to the condition of the trailer at delivery. That the warranty defined the buyer's remedy if a defect were discovered and reported within one year after delivery did not extend the warranty to future performance. *An extension of the period of limitation under 13 Pa.C.S. § 2725(b) will not be permitted except in those instances in which there is a clear and unambiguous expression of an intent that the warranty shall pertain to future performance.* See: Annot., 93 A.L.R.3rd 690 (1979).

342 Pa.Super. at 515, 493 A.2d at 709 (Emphasis added.)

In *Patton v. Mack Trucks, Inc.*, 360 Pa.Super. 1, 519 A.2d 959 (1986), the Superior Court held that a warranty that goods met or exceeded federal Occupational Safety and Health Law regulations in effect or proposed as of the date of the order of the goods was not a warranty explicitly extended to future performance of the goods. The Appellant was injured when a truck purchased by his employer from Mack Trucks, Inc. spun out of control due to a defect in the steering mechanism.

The Superior Court stated:

Professors White and Summers have observed that "extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to future performance of goods." J. White & R. Summer, Uniform Commercial Code § 11–9 (2d ed. 1980), Another expert has reasoned that Section 2725(b) "presumes that all warranties, expressed or implied, relate only to the condition of the goods at the time of sale." Klinger, *The Concept of Warranty Duration: A Tangled Web*, 89 Dick.L.Rev. 935, 939 (1985). The drafters of the Commercial Code certainly understood that in most cases a warranty is tested only after the seller has put the goods to their intended use. Nonetheless, they established "tender of delivery" as the point at which the period of limitations begins to run. Actual discovery of the breach is irrelevant in the usual case. This strict rule ensures that the seller will not have to account for its

product or wares beyond "the normal commercial record keeping period," unless it explicitly agrees to do so. 13 Pa.C.S.A. § 2725, Uniform Commercial Code Official Comment. Section 2725 serves the interests of commercial uniformity and practicality even though it might bar some otherwise meritorious breach of warranty actions.

We therefore must reject the argument that a warranty necessarily extends to future performance merely because it contains promises regarding the manner in which the goods will perform after tender of delivery. The same argument applies to nearly all warranties. If we held that the warranty in this case "explicitly extended" to future performance, we would allow the exception to swallow the rule. Commonplace warranties such as those which guarantee the number or quality of widgets a particular machine can produce or the number of pounds a particular truck can haul all would "explicitly extend" to future performance. The drafters of the Code would not have intended this result. As we noted in *Ranker*, supra [342 Pa.Super.] at 515, 493 A.2d at 709, parties must make a "clear and unambiguous expression" of their intent to extend warranties to cover future performance. This reading of Section 2725 does not render Mack's warranty "meaningless." Mack remained open to any suit for breach brought within four years of tender. The drafters of the Code selected the four-year period of exposure "as the most appropriate to modern business practice." 13 Pa.C.S.A. § 2725, Uniform Commercial Code Official Comments.

This analysis was found to be applicable to the instant case by the Superior Court. The Superior Court's concern that commonplace warranties guaranteeing the number or quality of goods could be interpreted to "explicitly extend" to future performance has been far overshadowed by this Court's extension of the concept of warranties explicitly extended to future performance to circumstances impliedly extending warranties to future performance.

The Superior Court observed in footnote 10 of its opinion that courts generally have held that implied warranties,

including those of merchantability and fitness for a particular purpose, cannot explicitly relate to future performance. An "implied warranty by nature cannot be explicit." J. White & R. Summers, Uniform Commercial Code, § 11–9, n. 73 (2d ed. 1980) In footnote 9 of the *Patton* opinion, the Superior Court cited several cases from other jurisdictions to illustrate explicit prospective warranties:

> For examples of explicitly prospective warranties, see *Commissioners of Fire District No. 9 v. American La France,* 176 N.J.Super. 566, 424 A.2d 441 (App.Div.1980) (fire truck "guaranteed for one year"); *Daughtry v. Jet Aeration Co.,* 91 Wash.2d 704, 592 P.2d 631 (1979) (sewerage system would provide "no difficulty during the first 2 years of operation"); *U.S. Industries, Inc. v. Mitchell,* 148 Ga.App. 770, 252 S.E.2d 672 (1979) (poultry cages guaranteed for ten years); *Mittasch v. Seal Lock Burial Vault, Inc.,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973) (burial vault warranted to give "satisfactory service at all times"); *Rempe v. General Electric Co.,* 28 Conn.Sup. 160, 254 A.2d 577 (1969) ("lifetime" warranty on garbage disposal).

360 Pa.Super. at 11, 519 A.2d at 965, fn. 9. See also, "What Constitutes Warranty Explicitly Extending To 'Future Performance' For Purposes of UCC § 2–725(2)," Annot., 93 A.L.R.3d 690. The qualitative and explicit nature of these express warranties differs substantially from the reference to "safety" upon which the majority rests its holding today.

I would affirm the order of the Superior Court and hold that the action was untimely as it was not brought within four years of the tender of delivery.

McDERMOTT and CAPPY, JJ., join in this dissenting opinion.

CAPPY, Justice, dissenting.

I write separately to respectfully dissent and to emphasize my disapproval of judicial intervention into an area which should be reserved exclusively for the Legislature.

As indicated by Mr. Justice Zappala in his dissent, the majority acknowledges that in extending Chapter 21 of the Uniform Commercial Code [1] to the lease of goods, it has usurped a proper legislative function. History has shown that there are occasions in which judicial activism is appropriate and even mandated by the judiciary's inherent responsibility to protect the citizens of this Commonwealth. However, in my view, this power is easily abused and should be sparingly utilized only in matters of extraordinary social importance. The case *sub judice* does not occasion such blatant judicial interference.

Therefore, based upon my strong disagreement with the Superior Court's finding that the judiciary should extend the sales provisions of the U.C.C. to cover lease agreements, I would affirm the Superior Court decision in result only. However, since the majority has decided otherwise with regard to the issue of extension of the applicable U.C.C. provisions, I am constrained to join Mr. Justice Zappala in dissent because I would agree that the majority has further compounded it's error by misapplying Section 2725 to the facts at issue in the case at bar.