372 A.2d 736

**Valentino FRANCIONI, Appellant,**

v.

**GIBSONIA TRUCK CORP.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1975.

Decided April 28, 1977.

James R. Fitzgerald, Pittsburgh, for appellant.

Richard J. Mills, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

The accident from which this matter arose occurred on January 2, 1968. On that date, Valentino Francioni, a truck driver employed by David Tesone Trucking Company and assigned to a 1957 White tractor with a Gilmore trailer attached, lost control of the tractor-trailer while driving down a highway in North Mahoney Township, Indiana County, Pennsylvania. The vehicle crashed through a highway guardrail and came to rest on its side in a creek at the bottom of an embankment. At the time of the accident, Francioni was on the business of his employer. The tractor was leased by David Tesone Trucking Company from Gibsonia Truck Corporation.

Francioni subsequently commenced this trespass action in the Court of Common Pleas of Allegheny County against Gibsonia Truck Corporation seeking damages for personal injuries allegedly sustained in the accident. Two causes of action, negligence and strict liability in tort pursuant to Section 402A of the Restatement (Second) of Torts, were pleaded. With regard to the latter, it was alleged in the complaint that the accident was caused by a defect in the steering component of the tractor. At the close of plaintiff's case, the lower court granted defendant's motion for a compulsory nonsuit on the 402A count. See Act of June 3, 1971, P.L. 120, No. 6, § 1, 12 P.S. § 645; Pa.R.Civ.P. 224. The case went to the jury on the count of negligence and a verdict in favor of defendant was returned.

Plaintiff then filed a motion to remove the compulsory nonsuit, arguing, in the motion, that "proof of a lease between the defendant and the ultimate user of the product is sufficient to satisfy the requirements of 402A . . . ." The court below concluded that expansion of the rule of strict liability to cover lessors was an issue

"more properly addressed to the appellate courts of this Commonwealth" for resolution and denied the motion on these grounds. On appeal the Superior Court affirmed per curiam without opinion. This appeal, after the grant of plaintiff's petition for allocatur, followed.

The application of strict liability in tort to lessors has never been considered by this Court although we have recognized strict liability recovery since our decision in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). In that case we adopted Section 402A of the Restatement (Second) of Torts as the law of Pennsylvania:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

On its face Section 402A applies to *sellers* of defective products, and because the Restatement provides for distinct negligence liability rules for lessors of chattels [1] it

1. § 407. Lessors of Chattels Known to be Dangerous
   A lessor who leases a chattel for the use of others, knowing or having reason to know that it is or is likely to be dangerous

is arguable that Section 402A is only applicable to sellers. On this basis, in *Speyer, Inc. v. Humble Oil & Refining Co.*, 275 F.Supp. 861 (W.D.Pa.1967), *aff'd*, 403 F.2d 766 (3d Cir. 1968), *cert. denied*, 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969), the District Court interpreting Pennsylvania law, refused to extend strict liability to the lessor of an allegedly defective fuel pump. We cannot agree with the logic of *Speyer*. It too easily disregards the policy basis for strict liability which supports application of the rule to any supplier of a product who, because he is in the business of supplying products, assumes a special responsibility toward the consuming public.[2]

In *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal. 2d 453, 150 P.2d 436 (1944), Justice (later Chief Justice) Traynor declared in his landmark concurring opinion:

. . . public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. *Id.* at 462, 150 P.2d at 440.

for the purpose for which it is to be used, is subject to liability as a supplier of the chattel.
§ 408. Lease of Chattel for Immediate Use
One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it.

2. The theory of liability of the supplier of chattels is premised upon the recognition that he has so dealt with the goods that they are likely to come into the hands of another and to do harm if they are defective. Originally, liability was based solely upon negligence. However, the trend towards finding a ground for strict liability began in approximately 1905 as a consequence of the national concern over the marketing of defective food. Prosser, Law of Torts, 4th Ed., Ch. 17, §§ 97, 98, pp. 650–658. Attempts to rely on a theory of "implied warranty" have proven ineffective because of the traditional concepts of contract law.

By the adoption of Section 402A, that responsibility was placed on those who, through manufacturing and distribution, intend that products "reach the market." *Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 187 n. 2, 242 A. 2d 231, 236 n. 2 (1968); Restatement (Second) of Torts § 402A, Comments c and f. While Section 402A speaks only in terms of "sellers", the foregoing policy statement and accompanying citations demonstrate the propriety of extending its application to anyone "who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, . . ." Restatement (Second) of Torts § 402A, Comment f. What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public. *Link v. Sun Oil Co.*, Ind. App., 312 N.E.2d 126, 130 (1974); *Whitfield v. Cooper*, 30 Conn.Sup. 47, 298 A.2d 50 (1972); *Delaney v. Towmotor Corp.*, 339 F.2d 4, 6 (2d Cir. 1964). Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose.

The leading case to apply strict liability principles to lessors is *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 212 A.2d 769 (1965). The plaintiff, a truck driver, was injured while riding in a truck leased by his employer from the defendant which was in the business of leasing motor vehicles. Plaintiff's complaint charged negligence on the part of the defendant as well as breach of defendant's warranty of fitness. The trial court, however, dismissed the warranty claim and the jury found in favor of the defendant on the issue of negligence. On appeal, the Supreme Court of New Jersey held, although no sale and purchase had occurred, that a warranty of fitness did indeed arise from the lease and reversed the lower court. It analogized the warranty of fitness to strict liability and noted a similarity of func-

tion between the seller and lessor of products which necessitated application of strict liability to both:

> A bailor for hire, such as a person in the U-drive-it business, puts motor vehicles in the stream of commerce in a fashion not unlike a manufacturer or retailer. In fact such a bailor puts the vehicle he buys and then rents to the public to more sustained use on the highways than most ordinary car purchasers. The very nature of the business is such that the bailor, his employees, passengers and the traveling public are exposed to a greater *quantum* of potential danger of harm from defective vehicles than usually arises out of sales by the manufacturer. *Id.* at 450, 212 A.2d at 777.

Several courts have followed the lead of *Cintrone* and extended Section 402A coverage to lessors in the business of leasing products to the public. *See Lechuga v. Montgomery*, 12 Ariz.App. 32, 467 P.2d 256 (1970); *Bachner v. Pearson*, 479 P.2d 319 (Alaska 1970); *Price v. Shell Oil Co.*, 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970); *McClaflin v. Bayshore Equipment Rental Co.*, 274 Cal.App.2d 466, 79 Cal.Rptr. 337 (1969); *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del.1976); *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470 P.2d 240 (1970); *Galluccio v. Hertz Corp.*, 1 Ill.App.3d 272, 274 N.E.2d 178 (1971); *Stang v. Hertz*, 83 N.M. 730, 497 P.2d 732 (1972); *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *George v. Tonjes*, 414 F.Supp. 1199 (W.D.Wis.1976). All have premised their holdings on these pertinent factors: (1) In some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) As in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) The lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) The lessor can distribute the cost of compensating for in-

juries resulting from defects by charging for it in his business, *i. e.*, by adjustment of the rental terms. We find the reasoning of these opinions to be highly persuasive and hold that all suppliers of products engaged in the business of supplying products for use or consumption by the public are subject to strict liability for injuries caused by "a defective condition unreasonably dangerous to the user or consumer or his property."

■ Engagement in the business of "selling" (leasing) products is, of course, a basic requirement of the rule. Restatement (Second) of Torts § 402A(1)(a); *Webb v. Zern, supra; McKenna v. Art Pearl Works, Inc.,* 225 Pa.Super. 362, 310 A.2d 677 (1973). The reason for this requirement is stated in Comment f to Section 402A:

> The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence.

That reasoning applies with equal force to both lessors and sellers. As the other courts which have considered this question have done, we shall make the rule "applicable to lessors in the same way as we have made it applicable to sellers." *Price v. Shell Oil Co., supra,* 2 Cal.3d at 253, 85 Cal.Rptr. at 183, 466 P.2d at 727; *Bachner v. Pearson, supra; Stewart v. Budget Rent-A-Car Corp., supra.*[3]

3. Appellee contends that its leasing arrangement with David Tesone Trucking Company was actually a method of financing equipment and not a conventional, commercial lease. The essence of appellee's argument is that the rule of strict liability does not extend to finance lessors engaged in the business of finance leasing. We agree with the appellee that the finance lease

Having determined that a supplier of chattels is responsible under a theory of strict liability pursuant to Section 402A, even where a lease arrangement exists, we must nevertheless ascertain whether evidence presented

is *sui generis* and that the policy considerations justifying an extension of the concept of strict liability to the true lease are not present when the lessor is not "marketing" or "supplying" the product but is, in fact, *merely a secured party, or financier,* whose collateral is the "product." The distinction between finance and conventional leasing has been described in the following manner:

> The finance lease and its variant, the leverage lease have brought into the leasing market men and financial institutions who are financiers rather than sellers. These lessors do not manufacture or sell the equipment they lease; instead, they purchase it for the lessee. That is, the equipment that is ordered by the lessee is purchased by the lessor and in turn rented to the lessee. . . . The reasons are obvious when one considers the tax advantages that are given to those who invest funds in equipment. Hawkland, *The Impact of the Uniform Commercial Code on Equipment Leasing,* 1972 U.Ill.L.F. 446, 449.

*See also* Comment, *Finance Lessor's Liability for Personal Injuries,* 1974 U.Ill.L.F. 154.

An additional distinction between conventional or "true" leases and finance or "security" leases is seen in the lessor-lessee relationship:

> The true lease is what is commonly meant by the word "lease." In theory, the lessor allows the lessee to use the equipment for some fraction of its useful life, but "fully expects to retake the chattel at the end of the lease term and either resell or re-lease it." The right to possession of the equipment upon default or expiration of the lease may be termed the "equipment reversion."
>
> The security lease may be thought of as a "disguised" security agreement, a secured installment sales contract or a lease "intended as security." Although the security leasing agreement is written in lease form, the security lessor does not expect to retake the goods at the end of the lease period but instead to transfer full ownership to the "lessee" for a minimal sum. Note, *In re Leasing Consultants,* 84 Yale Law Journal 1722, 1723 (1975) (footnotes omitted).

It is, therefore, a question as to whether the lessor is, in fact, *supplying* the particular chattel or whether he is offering the use of money. In the former instance, it is the supplier who selects the product and places it in the stream of commerce. In the latter situation, it is the "lessee" who chooses the product he wishes to use for his purposes. Since the trial court did not address the issue of the type of lease in question we leave it for decision upon remand.

by the plaintiff-appellant was sufficient to place the cause before the jury.

As always, in passing upon the propriety of the entry of a compulsory nonsuit, we accept the evidence produced by the appellant as true; we read it in the light most favorable to him and we accord him the benefit of all reasonable inferences arising therefrom. *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 237 A.2d 593 (1968); *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455, 219 A. 2d 676 (1966); *Antonson v. Johnson*, 420 Pa. 558, 218 A.2d 123 (1966). In any event, "[t]he facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant." *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 138–9, 153 A.2d 477, 480 (1959).

After a complete review of the record, we find that there is evidence which, if believed, would support a finding that a component part or parts of the steering mechanism of the White truck was defective, that this defect existed at the time the truck left the hands of the lessor and that this defect, in fact, was a legal cause of appellant's injuries. *See Bialek v. Pittsburgh Brewing Co., supra*; Restatement (Second) of Torts 402A.

The truck was "leased" on March 23, 1967, to David Tesone Trucking Company for a period of one year.[4] Approximately one week prior to the accident in question the truck had broken down on the road and had undergone extensive repairs at the garage of David Te-

---

4. Appellant did not introduce into evidence the lease which covered the tractor during the period with which we are concerned. Instead, appellant offered a copy of the lease, dated March 23, 1966, which was effective for a one-year term. David Tesone testified that this lease was similar in every respect except the date to the lease which was in effect at the time of the accident.

sone Trucking Company during which time a second-hand axle was placed in the truck. At trial appellant, a truck driver of at least eight years experience, consistently and repeatedly pointed out that the truck had "always," even prior to the repairs occasioned as a result of the December 26, 1967 "breakdown", been "rough and hard to steer," that he had to fight to keep it on the road, and that he complained to the appropriate persons about the difficulty, but that nothing was done to remedy the situation. He testified that after the repairs were made to the truck, it drove a little better than usual when unloaded, but that when it was loaded the steering "wandered . . . like it did when I had the truck before," that it was "rough steering . . . like the old truck before they put this other axle underneath it, *that it never did steer right*." (Emphasis added). As to the precise cause of the accident and appellant's resultant injuries, appellant testified that he careened off the highway when the steering failed. The appellant's expert witness also testified that the cause of the accident was a failure of the steering mechanism. On the basis of this testimony, we believe a jury could reasonably have drawn the inference that the defect in the steering existed at the time the truck was delivered to the lessee and that this defect was the proximate cause of appellant's injuries.[5]

5. The question of whether the subsequent repairs to the truck were so extensive as to sever the chain of causation from any prior defect and therefore to amount to a superseding cause, or whether the defect was the sole or merely a contributory cause of the injuries, was properly a question for the jury to resolve. *Kuisis v. Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321, 319 A.2d 914 (1974). Although extensive repairs were made to the truck, this fact is not sufficient to warrant the conclusion, *as a matter of law*, that the repairs severed the chain of causation from any prior defect. Concededly, certain component parts of the steering mechanism were replaced, however, several key parts were not. There was no testimony to exclude the possibility of the malfunctioning of the original parts as the cause or a *contributing cause*, of the accident in question.

For the above reasons, we reverse the order of the Superior Court affirming the lower court's granting of a compulsory nonsuit and remand the case for further proceedings consistent herewith.

Former Chief Justice JONES did not participate in the decision of this case.