## Grimm v. Scoa Industries

*Keith R. McMillen*, for plaintiffs.
*Oran W. Panner*, for defendant.

SAWYER, *P.J.*, February 8, 1979—This case comes before us on the preliminary objections of defendant, Scoa Industries, a/k/a Hill's Department Stores, to the second count of plaintiffs' complaint.

Plaintiffs aver that on or about October 25, 1977, Beverly Grimm and her minor son, Eric, were shopping in defendant's store in the Green Garden Plaza, Hopewell Township, Beaver County, Pa. While minor plaintiff was situated in a shopping cart provided by defendant, the cart tipped over, causing him to be injured.

A complaint was filed in trespass and assumpsit. The first count alleged negligence on defendant's part; and the second alleged that defendant had, by providing a defective shopping cart, breached its implied warranty that the shopping cart was fit for human occupancy. The complaint also alleged that defendant was the designer and manufacturer of the cart. However, it has since been stipulated that

the cart was neither designed nor manufactured by defendant. Defendant has filed a preliminary objection in the nature of a demurrer to this second count.

In support of the warranty argument, plaintiffs point to the relationship between the customer who uses the cart and the store which provides it as being one of an implied lease. They suggest that the protection afforded by the implied warranties of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended (UCC), 12A P.S. §§2-314, 2-315 (1970), be extended to nonsales transactions, such as an implied lease. Other states' courts have adopted this position in varying degrees.

"Cases which have found Article 2, or at least, the implied warranty provisions, to be applicable to a lease have employed at least three different rationales. Some courts have concluded that Article 2 is directly applicable to a lease because a lease is within the scope of Article 2 as it is a transaction in goods. . . . Other courts have concluded that the specific lease was analogous to a sale of goods and so have found that the lease was subject to Article 2. . . . Finally, other courts, comparing the economic considerations of leasing to a sale of goods, have concluded that certain provisions of Article 2 should be applied by analogy to lease transactions." Glenn Dick Equipment Co. v. Galey Construction, Inc., 541 P. 2d 1184, 1188-89 (Idaho 1975) (citations omitted); see 48 A.L.R. 3d 668, Application of Warranty Provisions of Uniform Commercial Code to Bailments (1973).

Thus far, no court of this Commonwealth apparently has addressed this issue. However, we are not without guidance. The Supreme Court of Pennsylvania has recently held that strict liability under

section 402A of the Restatement, 2d, Torts, extends to lessors of products: Francioni v. Gibsonia Truck Corp., 472 Pa. 362, 372 A. 2d 736 (1977). This extension of strict liability follows:

". . . the policy basis for strict liability which supports application of the rule to any supplier of a product who, because he is in the business of supplying products, assumes a special responsibility toward the consuming public. . . .

"What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public." Id. at 366-67, 372 A. 2d at 738.

While Francioni dealt with strict liability in tort, it cited with approval in Cintrone v. Hertz Truck Leasing & Rental, 212 A. 2d 769 (N.J. 1965), the leading case for extending products liability to lessors. In that case similar reasoning was applied but under the rubric of implied warranty. Furthermore, it has been acknowledged that the implied warranties of the UCC do not prohibit the development of similar warranties at common law in non-sales situations: Hoffman v. Misericordia Hospital, 439 Pa. 501, 267 A. 2d 867 (1970). Most importantly, we cannot ignore the fact that the policy underlying the imposition of products liability applies to both actions for breach of implied warranty and strict liability in tort: Prosser, Law of Torts, 650-58 (4th ed. 1971). Accordingly, our courts have abolished the privity requirements which previously accompanied an action for breach of implied warranties in order to render that action coextensive with that of strict liability: Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903

(1974); Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968). Since the principles underlying both actions are the same, whether one sues in trespass or in assumpsit should not be determinative of the outcome.

The policies which led the Supreme Court to provide for strict liability in nonsales situations support the finding of an implied warranty under the appropriate circumstances. Such a conclusion is not only logical, but to hold otherwise would throw out of balance that which the courts have endeavored to stabilize. We need not, however, determine more specifically the nature of such a warranty because the threshold requirement for its operation has been delineated by the court in Francioni. Just as an enterprise must be "in the business" of marketing or supplying a given product to be held strictly liable so must it be in order to be held to have impliedly warranted the product's fitness. Indeed, plaintiffs concede this point.

We do not believe that defendant was in the business of supplying or marketing shopping carts. Nor are we alone in this conclusion. Under similar facts, the court in Keen v. Dominick's Finer Foods, Inc., 364 N.E. 2d 502 (Ill. App. 1977), found that defendant was not in the business of renting shopping carts. It also rejected the argument that a shopping cart is furnished as an incident of the sale of the items generally sold by that defendant.

"In the present case, plaintiff's use of the allegedly defective shopping cart could only be considered as a use of a convenience furnished by Dominick's to facilitate its customers' shopping. Any mishap which might occur from availing oneself of such a convenience does not render the store

liable under the principles of strict products liability. In this case, the allegedly defective shopping cart was placed into the stream of commerce by the parties responsible for its distribution to Dominick's. The store, like its customer, is merely a user of the shopping cart." Id. at 504-05. See Shaffer v. Victoria Station, Inc., 572 P. 2d 737 (Wash. App. 1977).

Therefore, we sustain defendant's demurrer to the second count of the complaint.

## ORDER

And now, February 8, 1979, the preliminary objection of defendant in the nature of a demurrer is hereby sustained, and the second count of plaintiffs' complaint is dismissed.