**Roger JONES, Plaintiff,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, and National Railroad Passenger Corporation, a/k/a Amtrak, Vanalt Co., Inc. and Morrison–Knudsen Engineers, Inc., a Morrison–Knudsen Company and Elliott Equipment Corporation, t/a Elliott Hi–Reach, Defendants.**

**Civ. A. No. 91–7179.**

United States District Court, E.D. Pennsylvania.

Sept. 13, 1993.

Richard T. Kupersmith, Stewart J. Eisenberg, Weinstein, Goss, Katzenstein, Schleifer & Eisenberg Assoc., Philadelphia, PA, for Roger Jones.

Kathryn A. Dux, Dean F. Murtagh, German, Gallagher & Murtagh, Philadelphia, PA, for Southeastern Pennsylvania Transp. Authority.

Kathryn A. Dux, Dean F. Murtagh, German, Gallagher & Murtagh, Paul F.X. Gallagher, Gallagher, Reilly and Lachat, P.C., Philadelphia, PA, for Nat. R.R. Passenger Corp.

John F. Kent, Marks, Kent & O'Neill, P.C., Philadelphia, PA, for Vanalt Co., Inc.

Lynne Coughlin, Austin Hogan, Marc A. Landry, White and Williams, Philadelphia, PA, for Morrison–Knudsen Engineers, Inc., a Morrison Knudsen 800 Co.

Eugene Mattioni, Mattioni, Mattioni & Mattioni, Ltd., John Gerard Devlin, John Gerard Devlin & Assoc., P.C., Philadelphia, PA, for Elliott Equipment Co.

Eugene Mattioni, Robert R. Hyde, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Elliott Equipment Corp.

Joseph M. Oberlies, Connor & Weber, P.C., Philadelphia, PA, for Glazer Enterprises.

Lynne Coughlin, Austin Hogan, White and Williams, Philadelphia, PA, for Intern. Engineering Co., Inc.

Charles L. Powell, Swartz, Campbell & Detweiler, Ralph P. Bocchino, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Innovations Engineering Products, Inc.

John F. Kent, Anne M. Manero, Marks, Kent & O'Neill, P.C., Philadelphia, PA, for Vanalt Co., Inc.

Lawrence L. Robinson, Thompson & Pennell, Philadelphia, PA, for Tri–City Elec. Co.

### MEMORANDUM AND ORDER

YOHN, District Judge.

Defendant, Vanalt Company, Inc. ("Vanalt") has filed a motion for partial summary judgment on plaintiff's claims in strict product liability and breach of warranty. For reasons discussed below, the court will grant the motion.

## I. BACKGROUND

The following facts are essentially undisputed. Plaintiff initiated this action as a result of an accident in which he was severely injured when the lift bucket truck in which he was working encountered live electrical wires on November 18, 1989. Plaintiff's Complaint at 1. In his complaint, plaintiff alleges that the bucket truck was in a defective condition and that this defective condition contributed to the accident. Plaintiff's Complaint, Counts II, III.

Vanalt owned and still owns the bucket truck involved in the accident. Vanalt's primary business was and is electrical contracting. Taschek Deposition at 7. It had bid for the project on which the accident occurred, but another contractor, Innovations Engineering Products, Inc. ("IEP"), won the contract, having submitted a lower bid. *Id.* at 13–14. IEP then leased the bucket truck in question from Vanalt for the project, with an option to buy it. Plaintiff's Memorandum, Exhibit B.

Vanalt argues that plaintiff's claims against it in strict liability and breach of warranty cannot be sustained because Vanalt does not qualify as a seller under the product liability section of the Restatement (Second) of Torts or under Uniform Commercial Code. It claims that it comes under the "occasional seller" exception to section 402A of the Restatement (Second) of Torts, strict product liability.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Any issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must take the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980).

Pennsylvania adopted the strict liability section of the Restatement (Second) of Torts, section 402A, in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402A provides that:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Second) of Torts,* § 402A.

Section 402A makes it clear that, in order for strict liability to attach for harm caused by an allegedly defective product, the party who placed the product in the stream of commerce must be one who is "engaged in the business of selling such a product." *Id.* The meaning of this requirement is elaborated in one of the comments to the section:

The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant....

The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in the that activity as a part of his business.... The basis for the rule is the ancient one of the

special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods.

*Id.* at comment f. The comment gives as an example of an occasional seller the owner of an automobile who sells it to his neighbor, or even to a dealer, although he knows that the dealer plans to resell it. *Id.*

The Pennsylvania Supreme Court has not specifically adopted the "occasional seller" exception discussed in comment f, but this court predicts that it will when the opportunity arises. In *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975), the Pennsylvania Supreme Court noted the exception in a footnote, but that opinion was signed by only two justices; five others concurred in the result. 462 Pa. at 93, n. 3, 337 A.2d at 898, n. 3. The Pennsylvania Superior Court accepted the occasional seller defense to a product liability claim in *McKenna v. Art Pearl Works, Inc.,* 225 Pa.Super. 362, 365, n. 2, 310 A.2d 677, 679 n. 2 (1973). The exception is a logical one because the policy reasons behind section 402A, as described in comment f, would not be advanced by fixing strict liability on the occasional seller.

The Pennsylvania Supreme Court extended section 402A to apply to those who supply goods for public use by lease as well as by sale in *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977). The court reasoned, "[w]hat is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public." 472 Pa. at 367, 372 A.2d at 738 (citations omitted).

■ In addition to his product liability claim, plaintiff has sued Vanalt for breach of warranty. Pennsylvania adopted the same scope for breach of warranty under the Uniform Commercial Code as for strict liability in the Restatement (Second) of Torts, section 402A. In *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968), the court overruled its prior opinion that had maintained the requirement of privity of contract for breach of warranty under the Uniform Commercial Code. 432 Pa. at 231, 246 A.2d at 854 (overruling *Miller v. Preitz,* 422 Pa. 383, 221 A.2d 320 (1966)). The *Kassab* court said, "We no longer adhere to such a belief for we are convinced that, on this issue, the code must be co-extensive with the Restatement section 402A in the case of product liability." *Id.* The court noted that "the policy considerations underlying the imposition of strict liability in tort are precisely the same as those which dictate the abolition of privity in contract actions for breach of warranty." 432 Pa. at 230, 246 A.2d at 854; *see also Lemley v. J & B Tire Co.,* 426 F.Supp. 1378, 1379 (W.D.Pa.1977). Because the reach of product liability and breach of warranty actions are "co-extensive," and because the policy considerations underlying them are "precisely the same," we may therefore conclude that, where the occasional seller and the occasional lessor are excepted under section 402A because including them would not further the policy considerations that underlie the section, the same exception applies in breach of warranty actions. *See Salvador v. Atlantic Steel Boiler Co.,* 256 Pa.Super. 330, 389 A.2d 1148 (1978) (overriding reason for abolishing requirement of vertical privity in breach of warranty actions was to achieve legal symmetry in product liability area between contracts and torts).

Pennsylvania's version of the Uniform Commercial Code also makes clear that an implied warranty of merchantability does not apply to an occasional seller. Title 13 Pa. C.S.A. section 2314, entitled "Implied warranty: merchantability; usage of trade," states:

> (a) Sale by merchant. —Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind.*

13 Pa.C.S.A. § 2314(a) (emphasis added). The comment to the definitions section of the act, 13 Pa.C.S.A. § 2104, states:

> [I]n Section 2–314 on the warranty of merchantability, such warranty is implied only

"if the seller is a merchant with respect to goods of that kind." Obviously this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in the business and requires a professional status as to particular kinds of goods.

13 Pa.C.S.A. § 2104, cmt. 2, "Uniform Commercial Code Comment." The Pennsylvania Supreme Court has held that the express and implied warranty provisions of this act apply to lease of goods transactions also. *Cucchi v. Rollins Protective Services Co.*, 524 Pa. 514, 525, 574 A.2d 565, 571 (1990).

### III. DISCUSSION

Vanalt argues that it cannot be held liable under section 402A because there is no evidence that it was in the business of selling or leasing the product at issue, and it cannot be held liable for breach of warranty because (1) the lease specifically excluded all warranties and (2) implied warranties are not applicable to occasional sellers or lessors. Plaintiff contends that Vanalt is more than an occasional seller or lessor or, at least, that there is a genuine question of material fact as to whether it is in the business of selling or leasing or both.

■ Plaintiff and Vanalt both rely on the deposition of Louis Taschek, Vanalt's Eastern Division Manager. Mr. Tacshek testified that Vanalt's business was electrical contracting and that it primarily did work for railroads, "constructing catenary, signal work for trains, transmission line and distribution, electrical distribution." Taschek Deposition at 7. He further testified that leasing was not a part of Vanalt's business, although "[o]n occasion, people will want a rig and I may lease it." *Id.* at 87. He did not have a clear recollection of the number of such leases, but the number was small; his estimates ranged from fewer than five pieces of equipment to fewer than ten throughout the history of the business, which spanned over ten years. *Id.* Plaintiff did not adduce any other evidence by affidavit, deposition, interrogatory, production of documents or otherwise that would support a factual finding of more than ten leases or sales over the ten year period. On at least one other occasion, an individual was injured while using a piece of equipment leased from Vanalt. *Id.* at 4, 68. Plaintiff acknowledges that Mr. Taschek testified that selling or leasing equipment was not part of Vanalt's business, but he claims that parts of Mr. Taschek's testimony contradict that statement. He quotes the following passage of the transcript:

Q. Other than the Elliott Hi–Reach, was any other equipment leased to IEP?

A. Yes.

Q. What else?

A. A Pitman bucket, I think the other Elliott, I think a boom truck, I think— and I'm talking about for short period of time at their option. Some tools. I was trying to sell it to them, basically.

Q. Trying to sell the Elliott?

A. Sell anything.

Q. Was there a reason that you were leasing all this equipment: What if another job had come around, wouldn't you have required the same equipment?

A. That's a what if.

Q. At the time, you were just willing to deal with it if it came up?

A. Sure. You got investment in equipment and you can't hang onto investments forever.

*Id.* at p. 33–34. Plaintiff asserts that this line of testimony certainly implies that, "given the opportunity or circumstance, Vanalt Co., Inc. would lease and/or sell equipment like the Elliott Hi–Reach." Plaintiff's Memorandum at 3. As further evidence that Vanalt was in the business of leasing, plaintiff notes the sophisticated form lease that Vanalt used in leasing the bucket truck involved in the accident. Plaintiff's Memorandum, Exhibit B.

In response to counsel's question as to why Vanalt wanted to sell the bucket truck to IEP, Mr. Taschek responded:

A. Well, at the time, I didn't have any work and there were three individuals [principals] in the company and we have some investment here. And if I can get cash back, that's fine. I mean, I'm getting

rid of inventory and getting rid of licenses and so forth.

. . . . .

Q. Is it customary in your industry when you bid a project and you go out and buy equipment for the project, to then after that project sell the equipment and then when you go on another project, buy more equipment or do you usually use the same equipment from one project to the next?

A. More commonly to use it from one project to the next if the project exists and to keep adding to it and keep gathering that stuff which is no longer required, get it out of the fleet.

*Id.* at 82.

The court cannot find that any of the evidence on which plaintiff relies supports the idea that plaintiff was in the business of leasing or selling, rather than being an occasional lessor or seller. Nor does the evidence raise a genuine issue of material fact as to that issue. Plaintiff is more like an individual with several automobiles who trades in one every couple of years. Vanalt apparently never bought equipment for the purpose of resale or leasing. It bought equipment for its own use, and then occasionally sold or leased it if it had no immediate use for it and if the opportunity arose. Plaintiff's conclusion that "given the opportunity or circumstance, Vanalt ... would lease and/or sell equipment like the Elliott Hi-Reach" does not by itself support the idea that Vanalt was in the business of leasing or selling.

Testimony as to the number of leases of equipment Vanalt had had over the years shows that the "opportunity or circumstance" occurred infrequently.[1] A company in the business of selling or leasing would have made opportunities for itself, rather than simply making use of the few that came its way. Nor does the use of a sophisticated lease form show that Vanalt was in the business of leasing; it merely shows that Vanalt had access to a form lease. Mr. Taschek testified that Vanalt's lease was a copy of one used by a company that was in the business of leasing equipment. Taschek Deposition at 93.

Vanalt cites passages from Mr. Taschek's testimony in which he stated that Vanalt was an electrical contractor which only incidentally and infrequently leased equipment that was idle. The court finds that all the testimony cited by both parties supports that position, and that neither the deposition as a whole nor the particular passages relied on by plaintiff, nor any other evidence plaintiff cites creates a genuine issue of material fact as to whether Vanalt was in the business of leasing or selling equipment, or both, so as to be liable under section 402A.

■ Plaintiff's claim of breach of warranty must also fail. The lease, which explicitly excludes all warranties, is sufficient to free Vanalt from a breach of warranty claim by lessee IEP. In addition, as noted above, the scope of an implied warranty of merchantability is the same as that of strict liability under section 402A. It operates only against one who is in the business of selling or leasing, and the court has found no evidence that would allow a reasonable jury to conclude that Vanalt was in that business.

## IV. CONCLUSION

The policy considerations that underlie both strict product liability and breach of warranty as causes of action are not advanced by applying them to this sort of defendant. Comment f to section 402A, quoted above, sets out the policy behind the section. The comment states:

> The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods.

Restatement (Second) of Torts, § 402A, comment f. The *Kassab* court stated that "the

---

1. Mr. Taschek was not asked and did not testify as to the number of pieces of equipment Vanalt had sold over the years; however, his entire testimony is consistent with that of an occasional seller, rather than one who is in the business of selling.

policy considerations underlying the imposition of strict liability in tort are precisely the same as those which dictate the abolition of privity in contract actions for breach of warranty." 432 Pa. at 230, 246 A.2d at 854. Vanalt did not buy equipment for the purpose of selling or leasing it or with the intention of supplying it to others. Vanalt bought and still buys equipment for its own use, maintains it accordingly, and leases or sells idle equipment occasionally when the opportunity arises. In the instant case, the equipment would not have been idle but for the fact that IEP, rather than Vanalt, submitted the low bid for the project. In addition, there was no "forced reliance" of IEP on Vanalt. It would be inappropriate to burden Vanalt with "the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property" imposed by strict product liability and breach of warranty when leasing was such an infrequent and occasional activity of the company. For reasons stated above, Vanalt's motion for partial summary judgment on the issues of strict product liability and breach of warranty will be granted. An appropriate order follows.

### ORDER

AND NOW, this 13th day of September, 1993, upon consideration of the motion of defendant Vanalt Company, Inc. for partial summary judgment on the strict liability and breach of warranty claims, and the responses thereto, it is hereby **ORDERED** that the motion is **GRANTED** and the strict liability and breach of warranty claims are dismissed.