

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2008

# Taylor v. Mooney Aircraft Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Taylor v. Mooney Aircraft Corp" (2008). *2008 Decisions.* Paper 1533.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1533

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-5054

RALPH L. TAYLOR, III, individually and as personal
representative of the estates of Peter Sandek, Jo Ellen
Sandek, and Kyle Sandek,
Appellant

v.

MOONEY AIRCRAFT CORPORATION; HONEYWELL INTERNATIONAL, INC.;
HONEYWELL GENERAL AVIATION BUSINESS CORPORATION;
ALLIED-SIGNAL, INC. d/b/a Bendix King General Aviation
Avionics Division; KING RADIO CORPORATION; PARKER HANNIFIN
CORPORATION; SIGMA TEK, INC.; AEROSAFE CORPORATION

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 03-cv-00221)
District Judge:  The Honorable Robert F. Kelly

Argued:  January 14, 2008

Before: BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion Filed: February 25, 2008)

Matthew K. Clarke, Esq. (Argued)
Arthur A. Wolk, Esq.
The Wolk Law Firm
1710-12 Locust Street
Philadelphia, PA 19103

Counsel for Appellant


Austin W. Bartlett, Esq. (Argued)
Michael G. McQuillen, Esq.
Nicholas C. Bart, Esq.
Adler, Murphy & McQuillen
One North LaSalle Street
Suite 2300
Chicago, IL   60602
        -AND-
Lawrence M. Silverman, Esq.
Silverman & Krawitz
Two Penn Center Plaza
Suite 910
Philadelphia, PA   19102

Counsel for Appellee Honeywell Intl., etc.


Joe B. Whisler, Esq. (Argued)
Cooling & Herbers
110 Main Street
Suite 2400
Kansas City, MO 64105
        -AND-
Phinorice J. Boldin, Esq.
Fineman, Krekstein & Harris
30 South 17th Street
Suite 1800
Philadelphia, PA 19103

Counsel for Appellee Mooney Aircraft Corp.

OPINION

BARRY, Circuit Judge

Appellant Ralph L. Taylor, III, appeals the order of the United States District Court for the Eastern District of Pennsylvania granting motions for summary judgment filed by Mooney Aircraft Corp. ("Mooney") and Honeywell International, Inc. ("Honeywell"). For the reasons set forth below, we will affirm the result reached by the District Court, albeit on different grounds.

**I.**

Because we write only for the parties, familiarity with the facts is presumed, and we include only those facts that are relevant to our analysis.

On November 22, 2000, Peter Sandek, piloting a single engine plane, flew himself, his wife Jo Ellen, and their son Kyle from their home in Georgia to visit relatives in New York for Thanksgiving. Due to bad weather, the Sandeks were unable to land in New York as planned, and instead landed in Pennsylvania, where they stowed their plane in a hangar and completed their trip to New York by car. Following the holiday, on November 26, 2000, they drove from New York to Pennsylvania where they boarded their plane and took off, planning to return to Georgia. Tragically, however, the plane experienced mechanical trouble shortly after take off, crashing in Pennsylvania

3

approximately 10 miles from the airport. Peter, Jo Ellen and Kyle Sandek all died in the crash.

As a result of the crash, on November 25, 2002, the Sandek estates filed suit in Pennsylvania state court against several manufacturers, including Mooney, who manufactured the plane, and Honeywell, who manufactured an attitude indicator installed in the plane, alleging liability based on a number of theories, including negligence and strict products liability.[1] On January 15, 2003, the case was removed to the District Court, which had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[2]

On November 21, 2006, the District Court granted motions for summary judgment filed by Mooney and Honeywell. In its decision, the District Court, applying Pennsylvania's choice of law rules, held that Georgia's 10-year statute of repose for strict products liability and negligence actions applied to bar the Sandeks' claims.[3] The District

---

[1] Mooney designed and manufactured the plane in Texas, and originally sold it into the stream of commerce in 1987 to a purchaser in Michigan. After several subsequent transfers of ownership, in March 2000, Peter Sandek purchased the plane in Georgia from a Georgia company.

[2] The Sandeks were residents of Georgia. Mooney is a New Jersey corporation with its principal place of business in Texas. Honeywell is a Delaware corporation with its principal place of business in New Jersey.

[3] In relevant part, the Georgia statute provides:

> (b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not

4

Court reasoned that because the crash site in Pennsylvania was "wholly fortuitous," Pennsylvania had no interest in applying its substantive products liability law. (App. 13.) On the other hand, Georgia, as the place where the Sandeks lived, purchased the plane, and kept the plane, was "the only jurisdiction with an interest in this litigation." (Id.) Taylor, as representative of the Sandek estates, filed a timely notice of appeal.

On appeal, Taylor claims that the District Court's analysis improperly focused on "this litigation" as a whole, rather than proceeding issue-by-issue as Pennsylvania's choice of law rules require. As a result, the District Court failed to examine the policies underlying the relevant Pennsylvania and Georgia laws to determine whether either – or both – state's interests would be impaired if its law were not applied. According to

---

merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury.

(2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury sustained.

...(c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries...arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

Ga. Code Ann. § 51-1-11 (West 2007).

Taylor, had the District Court followed the proper analysis, it would have concluded that Georgia has no interest in applying its statute of repose in this dispute and, therefore, that Pennsylvania law should be applied.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. "In reviewing a grant of summary judgment we exercise plenary review and apply the same standard as the District Court." *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

This Court exercises plenary review over the District Court's choice of law analysis. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (citing *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir. 2005)).

## III.

A. This Court Must Apply Pennsylvania Choice Of Law Rules.

In a diversity case, such as this one, "we determine which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits." *Garcia*, 421 F.3d at 219 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, because the District Court sits in Pennsylvania, Pennsylvania's choice of law rules govern.

B. Pennsylvania's Choice Of Law Rules.

Pennsylvania follows a "flexible [choice of law] rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964). Under this approach, the court first must identify whether there are relevant differences between the states' laws that would affect the disposition of the litigation. If not, there is no conflict, and the court "may refer to the states' laws interchangeably." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir. 2007). If there are relevant differences, there is a conflict, and the court must "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.* at 230. The policy underlying a state's law is relevant only to the extent it is implicated by that state's contacts with the litigation.[4] *See id.* at 232 (finding that, based on the relevant states' contacts with the parties, "both states' interests are implicated on the facts of this case").

A true conflict exists "when the governmental interests of *both* jurisdictions would be impaired if their law were not applied." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170,

---

[4] The relevant contacts for a tort are enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d), and include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See generally Hammersmith*, 480 F.3d at 232-33 (looking to the Restatement (Second) of Conflict of Laws to determine the relevant contacts for Pennsylvania's choice of law analysis); *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689 (3d Cir. 1989) (same).

187 n.15 (3d Cir. 1991) (emphasis in original). If there is a true conflict, the court should apply the "law of the state having the most significant contacts or relationships with the particular issue." *Garcia*, 421 F.3d at 220 (citation omitted). "This analysis requires more than a 'mere counting of contacts,'" as the court "must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." *Hammersmith*, 480 F.3d at 231 (citations and alteration omitted). A false conflict exists when "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932 F.2d at 187. If there is a false conflict, the court should apply the law of the only interested jurisdiction. *Id.* Finally, "there are unprovided-for cases in which neither jurisdiction's interests would be impaired if its laws are not applied." *Garcia*, 421 F.3d at 220. In that case, the court should apply "[t]he principle of *lex loci delicti*, the law of the place of the wrong." *Id*.

Although Pennsylvania courts have not explicitly addressed it, this Court has assumed that Pennsylvania's choice of law analysis employs *depecage*, the principle whereby "different states' laws may apply to different issues in a single case."[5] *Berg Chilling*, 435 F.3d at 462 (assuming that Pennsylvania's choice of law analysis employs *depecage*); *see also Broome v. Antlers' Hunting Club*, 595 F.2d 921, 924 (3d Cir. 1979) (predicting that "a Pennsylvania court...would consider applying the law of different

---

[5] "A French word, *depecage* (DE-PA-SAJ) is defined as a 'cutting up, dismembering, carving up.'" *Kelly v. Ford Motor Co.*, 942 F. Supp. 1044, 1045 n.2 (E.D. Pa. 1996) (citation omitted).

states to the separate issues of liability and damages"). This assumption is based on the pronouncement in *Griffith* that Pennsylvania's choice of law analysis focuses on "the policies and interests underlying the *particular issue* before the court." *Griffith*, 203 A.2d at 805 (emphasis added). By suggesting that the court must analyze each issue separately, *Griffith* implies that different states' laws could apply to different issues.

**IV.**

A. The District Court's Analysis.

Although the District Court articulated the proper analytical framework for addressing Pennsylvania choice of law questions, its analysis was inadequate. First, it never identified the "particular issue before the court" (as required by *Griffith*), *i.e.*, whether Taylor's suit was time-barred under Georgia's statute of repose. Instead, it framed its choice of law analysis in terms of "this litigation" and "this action" as a whole. (*See* App. 11-13.)

Second, and perhaps as a result of failing to identify the relevant issue, the District Court never identified the relevant Pennsylvania and Georgia laws or the policies underlying those laws. That requirement is crucial, because it is impossible to classify the conflict (as "true," "false," or an "unprovided-for case") without first determining whether either or both states' interests will be impaired if its law is not applied. Nevertheless, the District Court essentially weighed the contacts, and determined that Georgia's contacts with the litigation were qualitatively more significant than

9

Pennsylvania's contacts. Such an analysis would have been proper only if the Court had already determined, based on its assessment of policies underlying the relevant Pennsylvania and Georgia laws, that it was presented with a true conflict. Here, however, that determination had not been made and the necessary steps (identifying and examining the underlying policies) to make such a determination had not been taken.

In the end, the District Court concluded that Georgia had an interest in applying its law because of the numerous Georgia contacts with this litigation, while Pennsylvania, which had only one fortuitous contact, had no such interest. Presented with what it deemed a "false conflict," the District Court held that the law of the only interested jurisdiction (Georgia) applied, and that Taylor's strict products liability and negligence claims were barred by Georgia's statute of repose.

B. Taylor's Claims On Appeal Are Not Barred Under The Doctrine Of Judicial Estoppel.

As a preliminary matter, Honeywell claims that Taylor should be estopped from arguing that Georgia law (*i.e.*, the statute of repose) does not bar his suit because he previously argued before the District Court that Georgia law *should* apply to a different issue in the case. Earlier in the litigation, another manufacturer defendant (who has since been dismissed from the case) moved for summary judgment on the ground that any claim against it had been discharged as a result of two general releases executed by the former administrator of the Sandeks' estates. Because Georgia law and Pennsylvania law differed in how they would interpret the releases, the District Court was presented with a

choice of law question. Taylor argued that Georgia had a significant interest in applying its law to the releases, while Pennsylvania had no such interest. The District Court agreed, finding that Georgia law applied to the releases. Taylor now argues that Georgia has no interest in applying its statute of repose, while Pennsylvania has a strong interest in applying its products liability law.

"[J]udicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001). Three requirements must be met before a court may apply judicial estoppel: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent"; (2) "the party changed his or her position 'in bad faith – *i.e.*, with intent to play fast and loose with the court'"; and (3) "it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Id.* at 779-80 (internal citations omitted).

Taylor contends that his argument on appeal (Georgia's statute of repose should not apply) is not inconsistent with his previous argument (Georgia's law on releases should apply) because Pennsylvania employs *depecage*. As discussed above, we have assumed that Pennsylvania's choice of law analysis employs *depecage*. *See Berg Chilling*, 435 F.3d at 462. *Depecage* permits Taylor to argue that one state's law applies to one issue in the case (*e.g.*, the release issue), while another state's law applies to a

different issue (*e.g.*, the timeliness issue). It follows that his claims are not irreconcilably inconsistent, and to the extent he can be viewed as having changed his position, it plainly was not in bad faith. Therefore, the requirements for judicial estoppel are not met.[6]

C. This Case Presents An Actual Conflict.

This case presents an actual conflict, as Pennsylvania's products liability law would permit Taylor's suit to go forward, while under Georgia law, it would be time-barred by that state's 10-year statute of repose. Therefore, we must classify the conflict as true, false or unprovided-for by examining the policies underlying the relevant laws. *See Hammersmith*, 480 F.3d at 230.

D. Georgia's Interest In Applying The Statute Of Repose.

Georgia's products liability law includes a ten-year statute of repose for strict products liability and negligence actions. The Georgia Supreme Court has explained that the statute of repose "was enacted in order to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 212 (Ga. 1994). That court has suggested that the policies underlying the statute of repose are reflected in the

---

[6] Of course, to the extent that Taylor has made statements of fact in prior court filings, he is barred from taking any position inconsistent with those statements under the doctrine of judicial admissions. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006). Honeywell argues that Taylor previously stated that Georgia law should apply broadly to the entire case, irrespective of the particular issue before the court. The statements identified by Honeywell are taken out of context. When viewed in context, it is clear that Taylor took no such position.

12

legislative history, specifically the 1978 Report of the Georgia Senate Products Liability

Study Committee ("1978 Report"). *See Love v. Whirlpool Corp.*, 449 S.E.2d 602, 605

(Ga. 1994) (citing the 1978 Report). The 1978 Report was created to address problems

due to the "radical alteration by the courts of the concept of product liability" and the

related "skyrocket[ing]" product liability insurance rates. (1978 Report at 1-2.)

After tracing the evolution of products liability litigation nationally, the 1978

Report addressed the effect of such litigation on products liability insurance rates in

Georgia:

> [T]he Committee found that premium rates are based on national
> experience. As a result of the interstate nature of products commerce and
> the inability to generate Statewide experience of meaningful size, the
> [Georgia] Insurance Department allows product liability rates to be based
> on national data. Therefore, experience in other states is reflected in the
> premiums paid by Georgians.

(1978 Report at 13.) The Report identified "five basic goals the Committee believes must

be met if the product liability problem is to subside." (1978 Report at 17.) In order, those

goals were (1) reducing "[t]he instability and unpredictability associated with product

liability litigation on a national level"; (2) reducing "the number of accidents by placing

the incentive for risk prevention on those parties best able to accomplish it"; (3) ensuring

"[t]he entitlement of a person injured by an unsafe product to receive reasonable

compensation"; (4) ensuring "[t]he availability and affordability of product liability

insurance"; and (5) establishing "[a]n adequate data base…to be used by insurance

companies in establishing premium rates and by the Insurance Department in monitoring

13

rates." (1978 Report at 17-19.) The Report concluded by making several recommendations to achieve those goals. The first such recommendation, and the only one relevant to this litigation, was to "[e]stablish a ten-year statute of repose" for products liability actions.[7] (1978 Report at 19.)

The 1978 Report makes clear that Georgia has an interest in applying its statute of repose here. Doing so would obviously advance Georgia's interest in stabilizing products liability litigation on a national level (*i.e.*, it would result in one less litigation). Given that "premium rates are based on national experience" and "experience in other states is reflected in the premiums paid by Georgians" (1978 Report at 13), barring suits by plaintiffs such as Taylor will ultimately lead to decreased premium rates for Georgia manufacturers.

Taylor claims that a policy of stabilizing national products liability litigation would only be implicated if either (1) the relevant products were designed, manufactured, distributed, or sold into the stream of commerce in Georgia, or (2) the defendant manufacturers were Georgia residents. This argument lacks merit because it creates a

---

[7] Additional recommendations included "establish[ing] misuse of a product as a defense in product liability suits"; "[a]llow[ing] comparative responsibility to be used in the apportionment of damages"; "[e]xpand[ing] the reporting requirements" of insurance companies and brokers; studying "the desirability of amending the tax and insurance laws to facilitate the formation of captive insurance companies primarily for use by trade associations to provide coverage for their members"; studying "the desirability of amending tax laws to allow reserve funds to be used for partial self-insurance programs"; and "includ[ing] wrongful death to be a cause of action under the theory of strict liability." (1978 Report at 20-22.)

requirement beyond that which is required under Pennsylvania's choice of law analysis. For purposes of that analysis, it is sufficient that Georgia's contacts with this litigation implicate the policy. *See Hammersmith*, 480 F.3d at 232. The policy to stabilize national products liability litigation is implicated whenever a party to a products liability case is a Georgia resident. In other words, Georgia has determined that run-away products liability litigation on a national level has led to increased products liability insurance rates for all manufacturers, including those from Georgia. Georgia has sought to address this problem by barring strict products liability (and negligence) suits after ten years. Therefore, Georgia has an interest in barring any such suit, and its interest is implicated anytime a party to such a suit is a Georgia resident. Here, Taylor is a Georgia resident, and thus Georgia has an interest in applying its statute of repose to bar his suit.

E. Pennsylvania's Interest In Applying Its Products Liability Law.

Pennsylvania has adopted Restatement (Second) of Torts § 402A, which provides in relevant part: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property." *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736, 738 (Pa. 1977) (quoting Restatement § 402A). Unlike Georgia, Pennsylvania has no statute of repose that would bar Taylor's suit. The Pennsylvania Supreme Court has explained that the "the policy basis for strict liability...supports application of the rule to any supplier of a product who, because he is

in the business of supplying products, assumes a special responsibility toward the consuming public." *Id.* The Restatement does not take a position as to whether a manufacturer of a defective product may be strictly liable to the general public (*i.e.*, one who is neither a user nor a consumer). *See* Restatement § 402A, cmt. o ("The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by [bystanders]."). Pennsylvania courts have not taken a position either, and federal courts attempting to predict the position Pennsylvania courts would take have reached different conclusions. *Compare Fedorchick v. Massey-Ferguson, Inc.*, 438 F. Supp. 60, 63 (E.D. Pa. 1977), *aff'd* 577 F.2d 725 (3d Cir. 1978) ("[W]e have no hesitancy in holding that Pennsylvania appellate courts, if faced with this issue, would extend § 402A's coverage to innocent bystanders."), and *Herman v. Welland Chemical, Ltd.*, 580 F. Supp. 823, 829 (M.D. Pa. 1984) (same), *with Berrier v. Simplicity Corp.*, 413 F. Supp.2d 431, 439-42 (E.D. Pa. 2005) (collecting cases and expressing doubt that Pennsylvania courts would permit bystanders to recover under a theory of strict liability).

Although Taylor argues that Pennsylvania's products liability law is based on a policy of protecting the general public, he points to no authorities in support of that position. To the contrary, the policy rationale articulated by Pennsylvania courts suggests that it was enacted only to protect "the consuming public." *Francioni*, 372 A.2d at 738. Given that Pennsylvania's products liability law is based on Restatement § 402A, which itself takes no position as to whether the general public is protected under a strict liability

16

theory, it does not appear that Pennsylvania adopted its strict products liability law to further its interest protecting the general public. Accordingly, Pennsylvania has no interest that would be impaired if Georgia law were applied here.

F. This Case Presents A False Conflict.

Because Georgia has a strong interest in applying its statute of repose, while Pennsylvania has no interest that would be impaired if its law were not applied, we are presented with a false conflict, and the law of the only interested jurisdiction should be applied. *See Lacey*, 932 F.2d at 187. Accordingly, Georgia's statute of repose should be applied to bar Taylor's claims.

## V.

Although the District Court's choice of law analysis was insufficient, the District Court reached the correct result when it held that Georgia's statute of repose applied. Accordingly, we will affirm the result reached by the District Court, but for the reasons stated herein. *See Brumfield v. Sanders*, 232 F.3d 376, 379 n.2 (3d Cir. 2000) ("An appellate court may affirm a result reached by the District Court on different reasons, as long as the record supports the judgement.") (citation omitted).